PIERCE, Justice, for the Court:
¶ 1. Miramar Lodge Nursing Home (Miramar), a 180-bed nursing facility, was destroyed by Hurricane Katrina on August 29, 2005. Miramar at the time was located in Pass Christian, Harrison County, Mississippi. On January 5, 2010, Harrison County Properties, LLC, d/b/a Gulfport Care Center (GCC,) filed a certificate of need (CON) application with the Mississippi Department of Health (DOH). GCC requested the CON for the construction of a replacement facility and relocation of ninety nursing-home beds from Miramar to an area located in central Harrison County, approximately twenty miles from Pass Christian. Sixty of Miramar’s 180 beds were-relocated in 2006 to Boyington Health Care Facility in Gulfport, Harrison County, Mississippi. The remaining thirty Miramar beds are the subject of a separate CON application, which proposed to relocate those thirty beds to Hattiesburg, Mississippi.
¶ 2. The CON at issue was filed and reviewed under the Fiscal Year 2010 Mississippi State Health Plan, as well as the *635 General Review Criteria in the Mississippi Certificate of Need Review Manual. The DOH staff evaluated the CON, and found it be in substantial compliance with the State Health Plan, the Certificate of Need Review Manual, and all adopted rules, policies, and procedures of the DOH.
¶ 3. Several nursing homes from Harrison County and Jackson County contested GCC’s CON application and requested a public hearing. A three-day hearing was held before a hearing officer, on June 29 and 30, and July 1, 2010. The hearing officer delivered her findings of fact and recommendation of the project on August 13, 2010. On August 26, 2010, the State Health Officer (SHO), concurring with the findings, conclusions, and recommendations of the DOH staff and the hearing officer, granted GCC a CON for the construction of a ninety-bed replacement nursing home in Harrison County.
¶4. The contestants appealed to the Hinds County Chancery Court, which affirmed the SHO’s decision. The contestants now appeal to this Court, arguing that: 1) DOH failed to comply with Mississippi law in granting the CON to GCC, as “GCC did not act in sufficient time to reopen Miramar under CON law”; 2) no actual need was demonstrated for the project; 3) no economic viability was demonstrated for the project; and 4) DOH failed to follow its own rules and regulations in granting the CON.
¶ 5. Additional facts, as necessary, will be related during our discussion of the issues.
STANDARD OF REVIEW
¶ 6. Judicial review for a final DOH order is limited by Mississippi Code Section 41 — T—201 (f) (Supp.2011) which provides, in pertinent part:
The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order ... is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal.
Further, this Court accords great deference to administrative-agency decisions. Delta Reg’l Med. Ctr. v. Miss. State Dep’t of Health, 759 So.2d 1174, 1176 (Miss. 1999). A rebuttable presumption exists in favor of the decision, and the burden lies with the challenging party to prove the contrary. Sprouse v. Miss. Employment Sec. Comm’n, 639 So.2d 901, 902 (Miss. 1994). This Court “cannot substitute its judgment for that of the agency or reweigh the facts of the case.” Id.
DISCUSSION
I. DOH’s Alleged Violation of Mississippi Law
¶ 7. The contestants contend that the project at issue violates Mississippi Code Section 41-7-191(l)(a) and (m), which states: *636 Miss.Code Ann. §§ 41-7-191(l)(a) and (m) (Supp.2011). The contestants submit that Miramar ceased to operate on August 29, 2005, and could not possibly have reopened before August 29, 2010 “(60 months after it ceased to operate),” given the timeline of relevant dates regarding the project. Thus, according to the contestants, the project “should have been initiated in an appropriate time period that would have allowed the nursing home to have reopened within the statutorily-determined 60-month period.”
*635 (l) No person shall engage in any of the following activities without obtaining the required certificate of need:
(a) The construction, development or other establishment of a new health-care facility, which establishment shall include the reopening of a health-care facility that has ceased to operate for a period of sixty (60) months or more;
[[Image here]]
(m) Reopening a health-care facility that has ceased to operate for a period of sixty (60) months or more, which reopening requires a certificate of need for the establishment of a new health-care facility.
*636 ¶ 8. GCC argues that the contestants waived this issue because they failed to raise it at the DOH hearing. GCC contends that, since the contestants did not present their statutory argument at the hearing, the DOH representative was not able to give testimony on the issue. GCC also contends that, waiver notwithstanding, the DOH did not violate any statute in approving the CON application, because, as the chancery court found, the CON application to replace the Miramar facility was filed, processed, reviewed, heard, and approved by the DOH less than sixty months from Miramar’s closing due to its destruction by Hurricane Katrina.
¶9. The chancery court ruled on this issue, as follows:
[The contestants] argue that the [DOH’s] decision violated the statutes as the Application specifically provided that GCC did not intend to obligate the capital expenditure for the Project until six (6) months after the granting of the CON and did not intend to complete the Project until twenty-four (24) months after the granting of the CON. Thus, [the contestants] argue that the replacement facility will not be reopened within sixty (60) months of Miramar’s closing. However, the pertinent statute contains no requirement that financing be fully committed, or that construction be fully completed, or that beds be ready for occupancy prior to the expiration of the sixty (60) month period. Instead, the statute merely provides that no person may reopen a health-care facility that has ceased to operate for a period of sixty (60) months without a CON for the establishment of a new health-care facility. In this instance, Miramar had not ceased to operate for a period of sixty (60) months when the CON to relocate and reopen was granted. Therefore, the [DOH] did not review, evaluate or approve the CON Application pursuant to [Section] 41-7-191(l)(a) and (m), which apply only to health-care facilities that have “ceased to operate for a period of sixty (60) months or more.” Instead, the [DOH] reviewed, evaluated and approved the CON Application pursuant to [Mississippi Code Section] 41-7-191(l)(b) and (e), which apply to the relocation of nursing home beds. In arguing that the [DOH] violated the relevant statutory provisions, [contestants] rely heavily upon an Attorney General Opinion issued on July 10, 2006. However, a close reading of Opinion reveals that the Attorney General was not presented with the factual scenario of this cause. Instead, the Attorney General was presented with the specific circumstances of a health-care facility that had already ceased to operate for sixty (60) months or more, without obtaining a CON during that time frame. Clearly, this is not the case in this matter. Therefore, this [c]ourt declines to accept [the eontestants’s] proposition the [DOH] erred as a matter of law. Instead, this [c]ourt finds that the [DOH] reviewed the Application under the proper statutory provisions and granted the CON in accordance with such provisions.
(Emphasis in original.)
¶ 10. First, GCC’s argument that the contestants failed to raise this *637 issue at the DOH hearing is well taken. While “[t]he ultimate authority and responsibility to interpret the law, including statutes, rests with this Court[,]” an agency’s interpretation of a statute “is an important factor that usually warrants strong consideration.” Queen City Nursing Center, Inc. v. Miss. Dep’t of Health, 80 So.3d 73, 84 (Miss.2011). We are without the DOH’s interpretation of Section 41-7-191(l)(a) and (m) in this instance, and we know of no decision by this Court that has defined this section. Nevertheless, we concur with the chancery court’s reading and application of this section to the facts of this case. The most reasonable and appropriate interpretation of this section is that no person may reopen a health-care facility that has ceased to operate for a period of sixty months without obtaining a CON for the establishment of a new health-care facility. When GCC sought a CON for the reestablishment of a previously existing facility, the sixty-month period had not yet elapsed. Accordingly, the DOH did not violate Section 41-7-191 (a) and (m). And we find that this issue is without merit.
II. Need
¶ 11. The contestants allege that need does not exist for Miramar, as Harrison County’s need is amply served by other facilities. GCC contends, however, that the DOH conducted a full-scale assessment of the need for Miramar under the four health-planning policies in the State Health Plan and the General Review Criteria in the CON Review Manual and made a finding in its favor. The question before this Court is whether DOH’s decision is supported by substantial evidence. Queen City Nursing Center, 80 So.3d at 78-79.
¶ 12. The SHO for the DOH clearly identified each of the health-planning policies: 1) improving the health of Mississippi residents; 2) increasing the accessibility, acceptability, continuity and quality of health services; 3) preventing the unnecessary duplication of resources; and 4) providing some cost containment. The SHO explained that the first element was met because Mississippi residents would have nursing home beds, destroyed by Hurricane Katrina, replaced and relocated further inland to avoid problems in the future with hurricanes. Next, the SHO found that the second element had several components, and the evidence showed that Miramar had complied with each. Then, the SHO stated that the Miramar beds already were recognized in the State Health Plan for health-planning purposes, and therefore, Miramar did not constitute an unnecessary duplication of services. Finally, the SHO made clear that the evidence illustrated that the costs of Miramar fell squarely within the middle of the guidelines of construction costs for nursing-home projects, and thereby satisfied the fourth element.
¶ 13. After the SHO reviewed the four health-planning policies in the State Health Plan, she turned to the General Review Criteria in the CON Review Manual. Specifically, criterion five addressed need, with five subparts: 1) need of the population served; 2) relocation of a facility or service; 3) current and projected utilization; 4) probable effect of proposed facility or service on existing facilities; and 5) community reaction. Upon review of each subpart, the SHO found that the relocation of Miramar complied with each.
¶ 14. Under subpart one, the SHO considered the testimony of Rachel Pittman, health planner with the DOH, and Dan Sullivan, a health-care management consultant. Both experts testified that Mira-mar would be open to everyone who needed its services, including the indigent and *638 those patients supported by Medicaid and Medicare. Also, the SHO relied on Sullivan’s testimony that, even though Harrison County had some available capacity, the number of beds in the inventory was not excessive. With subpart two, the SHO considered that relocating Miramar to Gulfport was desirable, because the facility would be relocated to a safer location and to an area with greater population growth. In analyzing subpart three, the SHO relied on testimony that described how the current facilities in the area had been adding beds to address the need in and around Harrison County since Hurricane Katrina. Because the area was growing and because there is no occupancy standard which applies to replacement projects, the SHO was satisfied that Miramar had met this component. After reviewing subpart four, the SHO explained that Miramar also had met this component because the opponents stipulated that they did not contend that Miramar would have any kind of adverse financial impact on their operations and because GCC presented detailed testimony to show that Miramar will not have an adverse impact on existing facilities. Finally, the SHO opined that subpart five had been met because there was good community support for Miramar in the record through various letters of support, endorsement by the Harrison County Board of Supervisors and the testimony of Bobby Beebe, President of Regional Services, Inc., which is affiliated with GCC and oversees operations of seventeen nursing homes throughout Mississippi.
¶ 15. The record evidence substantially supports the finding that there is a need to replace beds lost to Hurricane Katrina. Miramar takes nursing home beds destroyed by Hurricane Katrina and relocates those beds to a safer location into an area with higher population growth. Moreover, the contestants conceded that Miramar would not have an adverse financial impact on their operations. As the SHO explained in her opinion, the record is supported by substantial evidence. Therefore, this issue is without merit.
III. Economic Viability
¶ 16. The hearing officer was presented with conflicting expert testimony on whether Miramar was economically viable. While the contestants asserted that GCC failed to make three-year profitability projections, testimony shows that in year one, Miramar would operate at a loss, but in the each of the next two years, Miramar would operate with more than $400,000 in profit in each year. Additionally, the contestants challenged whether Miramar had sufficient operating capital to sustain it; but testimony showed that the Family Trust had sufficient capital to sustain the Miramar project.[1] Accordingly, the hearing officer found substantial evidence in the record that Miramar would be economically viable, and that finding was adopted by the SHO.
¶ 17. The contestants also argue that GCC has failed to adequately demonstrate: 1) that Miramar has sufficient working capital; 2) that GCC can borrow sufficient capital to cover the costs of construction; and 3) that the operating expenses are properly identified. Yet, we find that the SHO was presented with substantial evidence that rose above a scintilla or suspicion and that GCC’s projections were reasonable. Miss. State Dep’t of Health v. Baptist Mem’l Hosp.-Desoto, 984 So.2d 967, 979-80 (Miss.2008). Be *639 cause the SHO’s decision is presumed valid, the presence of competing expert opinions on economic viability leads this Court to the conclusion that there is substantial evidence in the record to support the SHO’s finding that Miramar is economically feasible. See id. at 980.
IV. DOH’s Alleged Failure to Follow Its Own Rules and Regulations
¶ 18. The contestants contend that the DOH abrogated its responsibility to perform a “full and complete” review of GCC’s application. The contestants submit that, not only were data and documents missing from the application, but also, much of the information contained in the application was inconsistent and inaccurate. Specifically, the contestants claim there is an issue as to who is the real owner of the ninety beds to be relocated. They also assert that there is no evidence in the record that the contract for land purchase was ever consummated or that GCC received an extension to extend such contract.
¶ 19. Again, a rebuttable presumption exists in favor of the DOH’s decision, and the contestants had the burden in this case to prove the contrary. Sprouse, 639 So.2d at 902. (Miss.1994). The contestants take issue with the fact that the first draft of the purchase agreement in this case references the company “Pensacola Health Trust.” According to the record, however, a revised subsequent version of the purchase agreement reflected the proper owner as Skyler Hattiesburg. This purchase agreement, evidencing the transaction, was introduced at the hearing. As for the contract for land purchase, the record reflects a specific site approval by the DOH and that the application complied with the statutory requirement of a physical location, under Mississippi Code Section 41-7-195(1) (Rev.2009).
¶ 20. Even though the DOH may have employed an imperfect method in making its decision, its decision should be affirmed when it is supported by substantial evidence. Miss. State Dep’t of Health v. Rush Care, Inc., 882 So.2d 205, 210-11 (Miss.2004). Here, the DOH’s decision is supported by substantial evidence. Therefore, this issue is without merit.
CONCLUSION
¶ 21. Having found that the SHO’s decision to grant GCC a CON for the construction of a ninety-bed replacement nursing home in Harrison County is supported by substantial evidence, we affirm the decision of the Hinds County Chancery Court.
¶ 22. AFFIRMED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND KING, JJ., CONCUR.

. The financial capabilities of the Family Trust were sealed; however, the record is clear that the SHO was presented with this material, enabling her to use these sealed figures to determine whether the Miramar project was economically viable.