# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-SA-01547-COA

MISSISSIPPI DEPARTMENT OF REVENUE                  APPELLANT
F/K/A MISSISSIPPI STATE TAX COMMISSION

v.

DAVID HEATH D/B/A HEATH AVIATION                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2013 |
| TRIAL JUDGE: | HON. VICKI B. COBB |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ABIGAIL MARSHALL MARBURY DAVID J. CALDWELL GARY WOOD STRINGER |
| ATTORNEY FOR APPELLEE: | A.M. EDWARDS III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | VACATED DECISION OF THE MISSISSIPPI DEPARTMENT OF REVENUE, WHICH ASSESSED USE TAX IN THE AMOUNT OF $120,114 AGAINST THE APPELLEE |
| DISPOSITION: | REVERSED AND RENDERED: 06/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. The Mississippi Department of Revenue (MDOR) appeals the order of the Chancery Court of Montgomery County, which vacated MDOR's assessment of use tax against David Heath, doing business as Heath Aviation, a Mississippi corporation located in Winona, Mississippi. Finding error with the chancery court's decision against MDOR, we reverse, render, and reinstate the assessment of the Mississippi Board of Tax Appeals.

**PROCEDURAL HISTORY**

¶2.     On September 25, 2008, MDOR issued an assessment of use tax of $120,114, and penalties and interest of $29,334, for a total amount of $149,448 against Heath Aviation for the period from July 1, 2006, through July 31, 2008 ("the audit period"). Heath Aviation repairs and services avionics equipment for aircraft. Such equipment includes navigation, communication, and flight-control electronics. MDOR's use-tax assessment was based upon its conclusion that Heath Aviation purchased parts, equipment, and other tangible property from out-of-state vendors for which no sales tax was paid. Heath Aviation appealed the assessment to the Mississippi State Tax Commission's Review Board.[1] On March 26, 2009, after a hearing, the Review Board entered an order upholding the use-tax assessment of $120,114 on the purchase of parts, but abating all penalties and interest. Heath Aviation appealed to the full Commission.[2] After a hearing, in June 2010 the full Commission upheld the decision of the Review Board. Aggrieved, Heath Aviation appealed to the chancery court. In July 2013, a one-day trial was held. The chancellor vacated the order of the full Commission, ordering a refund of the $120,114 Heath Aviation had paid under protest. MDOR now appeals.

**STATEMENT OF FACTS**

---

[1] The Mississippi State Tax Commission was reorganized on July 1, 2010, and became the Mississippi Department of Review.

[2] MDOR explains that the full Commission was part of the Mississippi State Tax Commission, but is now known as the Mississippi Board of Tax Appeals. *See* Miss. Code Ann. § 27-77-5 (Supp. 2014).

¶3. Heath Aviation is solely owned and operated by David Heath. The company buys parts, equipment, and other tangible personal property to perform repairs and servicing on aircraft; it does not offer parts for retail sale. Parts are regularly purchased from both in-state and out-of-state vendors.

¶4. Prior to July 1, 2006, Heath Aviation was required to charge and collect from its customers a seven percent sales tax on gross income derived from repairing and/or servicing aircraft under Mississippi Code Annotated section 27-65-23 (Rev. 2010).[3] "Gross income" included amounts paid by customers for parts, labor, and shipping. Heath Aviation paid all sales tax during this period and was never audited.

¶5. In 2006, the Mississippi Legislature amended section 27-65-23 through Senate Bill (S.B.) 2988, which deleted the requirement that businesses repairing or servicing aircraft were liable for the collection and payment of sales tax on gross income. The initial version of S.B. 2988 also sought to amend section 27-65-101(1)(ee) of the Mississippi Code Annotated (Supp. 2014). This code section provides sales-tax exemptions for the purchase of certain industrial items. The proposed amendment would have deleted certain limiting language in one of the exceptions; however, the Legislature ultimately decided not to revise

---

[3] At trial, Meg Bartlett, associate commissioner and an expert witness for MDOR, explained how sales-tax law is structured. All sales of tangible personal property are subject to sales tax unless they are specifically exempted by statute. If property is exempt from sales tax, it is presumed to be exempt from use tax, both of which have the rate of seven percent. *See* Miss. Code Ann. § 27-67-7(b) (Rev. 2010) (use tax not to be collected on use of tangible personal property to the extent sales of similar property are excluded or exempt from sales tax or taxed at the wholesale rate). Repair and servicing of aircraft is not subject to use tax.

section 27-65-101(1)(ee).[4]  The final version of the bill removed any reference to this code section or its proposed exemption.

¶6.    At trial, Bartlett testified as to the proposed amendments and their effect on Heath Aviation's tax obligations.  She testified that the final version of the bill only changed section 27-65-23, removing the sales-tax obligation for the repair and servicing of aircraft; it did not amend section 27-65-101 or alter a business's obligation to pay sales or use tax on its purchase of parts.  Thus, Bartlett opined that Heath Aviation was no longer responsible for collecting and remitting sales tax on gross income from servicing aircraft, but it still had to pay sales or use tax on parts, depending on whether its seller was in-state or out-of-state, and whether Mississippi sales tax was collected by its seller at the time of purchase.  If Heath Aviation purchased parts from an in-state vendor, the vendor would be required to charge Mississippi sales tax to Heath Aviation.  Alternatively, if Heath Aviation purchased parts from an out-of-state vendor, Heath Aviation would be required to pay use tax to MDOR if the vendor did not charge Heath Aviation either its own state's sales tax or Mississippi sales tax.

¶7.    S.B. 2988 was signed by the Governor and became effective on July 1, 2006.  David

---

[4]  Section 27-65-101(1)(ee) refers to sales-tax exemptions of an "industrial nature" for:  "Sales of parts used in the repair and servicing of aircraft *not registered in Mississippi engaged exclusively in the business of foreign or interstate transportation* to businesses engaged in aircraft repair and maintenance."  (Emphasis added).  The proposed amendment to the statute would have deleted the italicized language thereby excluding sales tax paid by businesses on all parts used in the repair and servicing of aircraft.

Heath heard about the change in the law from a customer; so he and his accountant, Murray Greenlee, questioned whether Heath Aviation was still obligated to pay sales tax after July 1. They contacted MDOR and were advised Heath Aviation did not have to collect or pay sales tax.

¶8. On July 14, 2006, MDOR prepared a notice for all aircraft-repair facilities that might have been affected by the amendment to section 27-65-23. The notice was to be delivered to each business by field personnel in the district. The chancellor found that David Heath did not receive the notice. Bartlett, who wrote the notice and was then director of the Sales and Use Tax Bureau, testified that the notice's purpose was to provide guidance on how MDOR would interpret S.B. 2988. The notice explained:

> Effective July 1, 2006, all charges for repairs and servicing to aircraft are now exempt from sales tax. *Sales or Use tax is now due on the purchase of all parts used in the repairing or servicing of aircraft.* Tax must be paid to the vendor at the time of purchase or directly to the state on a Use Tax Return if the parts are purchased from an out-of-state vendor who does not charge the Mississippi tax.

(Emphasis added).

¶9. In early October 2006, Heath contacted MDOR to determine whether Heath Aviation was fulfilling its tax obligations after receiving estimated sales tax assessments from MDOR.[5] Heath spoke with Bartlett. She testified that she told him that his business would

---

[5] Heath Aviation had stopped collecting sales tax and filing a monthly return, but it had not surrendered its sales-tax permit, which resulted in MDOR's making an estimated sales-tax assessment to the company.

no longer be subject to sales tax on charges to customers, but his purchase of parts would be subject to sales tax if he bought those parts from a vendor in-state, and he may owe use tax if he bought any parts from out-of-state. However, Heath claims Bartlett did not advise him specifically that he might be required to pay use tax. The chancellor rejected Bartlett's claim that Heath received "the same, if not better, information" in the telephone call than he would have obtained from the notice.[6] Bartlett also testified she advised him to surrender his sales-tax permit if he was not carrying any inventory, so he would not be responsible for filing sales tax returns and would not receive estimated tax assessments from MDOR. Finally, she told him Heath Aviation was required to establish a use-tax account if it planned on purchasing parts from out-of-state vendors. Heath testified that when he spoke to Bartlett, he did not understand the difference between sales and use tax, and he did not seek further clarification from MDOR or a certified public accountant about any use-tax obligations.

¶10.    On October 3, 2006, Heath Aviation sent a letter to MDOR stating it had not collected sales tax for the repairing and servicing of aircraft since July 1, 2006, due to S.B. 2988, but it did not know it had to relinquish its sales-tax permit (which it promptly did). The letter did not mention sales tax on parts, or use tax.

¶11.    In 2008, David Heath contacted MDOR to request further information about tax obligations under S.B. 2988. He requested the information to forward to a parts dealer to

---

[6] Bartlett testified, however, and no one has disputed, that the MDOR was under no obligation to prepare or send the notice.

show that his purchases were exempt from sales tax. In response to Heath's request, MDOR faxed him a copy of its July 2006 notice. Heath claims this was the first time he received the notice. After reviewing the notice, Heath testified that he became concerned because, while he knew he was exempt from sales tax from 2006 to 2008, the MDOR might seek to impose use tax on his business. Heath then contacted MDOR to see if his company had any outstanding liability for failure to pay use tax on parts he had purchased from 2006 to 2008, and what he might do to get the matter "cleaned up." MDOR told Heath to request an audit of his business, which he did. MDOR also told Heath it could not forgive any unpaid taxes he might owe. Heath responded that he thought he had been "following the letter of the law."

¶12. In August 2008, MDOR began its audit of the tax period from June 1, 2006, to July 1, 2008. The auditor noted that Heath Aviation was not registered for use tax and no use tax had been reported during the audit period, nor had it paid sales tax on parts it had purchased during this period. The auditor assessed Heath Aviation for unpaid use taxes totaling $120,114, interest of $17,323, and a penalty of $12,011, for a total assessment of $149,448. The full Commission, however, upheld the Review Board's decision to exclude all penalties and interest.

**STANDARD OF REVIEW**

¶13. On appeal, the reviewing court "does not adjudicate the wisdom/sageness of the agency's decision, but rather is limited to examining the legality of the decision." *Equifax*

7

*v. Miss. Dep't of Revenue*, 125 So. 3d 36, 41 (¶8) (Miss. 2013).  Further, the chancery court is required to give deference to the decision and interpretations of the law and regulations of MDOR just as it does with any other administrative agency, but the case shall be tried de novo.[7]  Miss. Code Ann. § 27-77-7(5) (Supp. 2014).  "Courts accord great deference to decisions of administrative agencies; a judgment of an administrative agency is binding unless a party proves otherwise." *Equifax*, 125 So. 3d at 41 (¶9).  "A rebuttable presumption exists in favor of the [agency's] decision, and the burden lies with the challenging party to prove the contrary." *CLC of Biloxi LLC v. Miss. Dep't of Health*, 91 So. 3d 633, 635 (¶6) (Miss. 2012).  The reviewing court "cannot substitute its judgment for that of the agency or reweigh the facts of the case." *Id.* (quoting *Sprouse v. Miss. Emp't Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994)).  The appellate court "will reverse the decision of an

---

[7]  Section 27-77-7(5) states in pertinent part:

> At trial of any action brought under this section, the chancery court shall give deference to the decision and interpretation of law and regulations by the Department of Revenue as it does with the decisions and interpretation of any administrative agency, but it shall try the case de novo and conduct a full evidentiary judicial hearing on the issues raised.  Based on the evidence presented at trial, the chancery court shall determine whether the party bringing the appeal has proven by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested.

The statute was amended by the Legislature in 2014, altering the deference courts are required to give MDOR decisions.  However, both parties agree that the amendment has no impact on this appeal as the amendment became effective January 1, 2015, and Heath's use tax was assessed in 2008.  *See* 2014 Miss. Laws, Ch. 476 § 19.

administrative agency only if the decision (1) was unsupported by substantial evidence; (2) was arbitrary and capricious; (3) was beyond the power of the administrative agency to make; or (4) violated the complaining party's statutory or constitutional right." *Buffington v. Miss. State Tax Comm'n*, 43 So. 3d 450, 453-54 (¶12) (Miss. 2010) (quoting *Miss. Methodist Hosp. & Rehab. Ctr. Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 606 (¶14) (Miss. 2009)).

## ANALYSIS

¶14. First, MDOR argues that the chancery court used an improper standard of review when rendering its decision. Second, MDOR claims the assessment of use tax against Heath Aviation was proper, as S.B. 2988 did not provide any new exemption from use tax on parts used to repair/service aircraft, nor did section 27-65-101(1)(ee) provide a sales-tax exemption on parts purchased by Heath Aviation.

¶15. The chancery court's order of August 19, 2013, explained that Heath Aviation's potential liability for use tax arose in 2006, when S.B. 2988 was signed into law by the Governor, amending section 27-65-23 to exempt from sales tax businesses engaging in the repair and service of aircraft. The effective date was July 1, 2006. The court found the exemption impacted use tax as well under Mississippi Code Annotated section 27-67-7(b) (Rev. 2010), which provides that use tax shall not be collected if sales of similar property or products in Mississippi are either excluded or exempt from sales tax. The chancery court found "that the change to section 27-65-23 created ambiguity in the statute and confusion for Plaintiff as to whether sales of parts, labor or the total charge for his services were exempt

9

from sales tax, and thereby exempt from use tax." The court interpreted the change in section 27-65-23 to find Heath Aviation's purchase of parts, and its total charges for services, including parts and labor, were exempt from sales tax, and thereby use tax. Thus, the court vacated Heath Aviation's assessment of use tax.

¶16. In her bench ruling, the chancellor noted that Health had been a "responsible businessman" and "very compliant" on his collection of sales tax. Because Heath acted in "good faith," the chancellor made the "equitable ruling" that Heath should not be assessed the use taxes at issue. However, she advised Heath it would be important for him to abide by the MDOR rules and regulations "in the future" as "the spirit" of the levy of "use tax would probably" subject him to use tax for items he is purchasing and installing on airplanes.

## I. Standard of Review and Statutory Interpretation

¶17. MDOR argues that the chancery court improperly based its ruling in equity, and did not specifically identify any standard of review. Since this case is one of statutory interpretation, the chancery court was required to give deference to the MDOR's interpretation of the law and regulations. Miss. Code Ann. § 27-77-7(5); *Buffington*, 43 So. 3d at 454 (¶12). Our supreme court has held:

> We will not engage in statutory interpretation if a statute is plain and unambiguous. However, statutory interpretation is appropriate if a statute is ambiguous or is silent on a specific issue. In either case, the ultimate goal of this Court is to discern the legislative intent. The best evidence of legislative intent is the text of the statute; the Court may also look to the statute's historical background, purpose, and objectives. If a statute is ambiguous, it is this Court's duty to carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case.

*Buffington*, 43 So. 3d at 454 (¶13) (footnote omitted) (quoting *Miss. Methodist Hosp.*, 21 So. 3d at 607-08 (¶18)).

¶18.    While the interactions of the sales- and use-tax statutes are complex, and as the chancellor noted, somewhat confusing, we cannot find the changes to section 27-65-23 "created ambiguity," as the chancellor determined.  In her order, the chancellor stated that the exemption from sales tax created by section 27-65-23 automatically exempted any assessment of use tax against Heath Aviation.  However, as MDOR points out, sales tax in section 27-65-23 is based on gross income a business derives from its services, and not its own purchase of parts from vendors.  The Legislature's removal of sales tax on the gross income of Heath Aviation's business under section 27-65-23 had no effect on Heath Aviation's obligation to pay use tax on purchases from out-of-state vendors.

¶19.    The short title of the initial version of S.B. 2988 read as follows:  "An act to amend Section 27-65-23 . . . to remove the repairing and servicing of *all* aircraft from the activities taxed under the Sales Tax Law; To amend Section 27-65-101 . . . *to exempt from sales taxation sales of parts* used in the repair and maintenance of *all* aircraft; and for related purposes."  (Emphasis added).  The short title of the bill as sent to the Governor just referenced the language pertaining to section 27-65-23.

¶20.    The only possible ambiguity in the statutory scheme arises from a notation at the bottom of the last page of each version of S.B. 2988, which references exemption of parts from tax.  The notation reads: "ST: Sales taxation; exempt all aircraft maintenance, repair

11

and parts from." This notation appears to be a nonsubstantive internal description used by the Legislature, which was not changed when the final version of the bill passed.

¶21. Our supreme court has quoted the United State Supreme Court to explain the rule that a title may not be used to create ambiguity within an act; we find the same rule would logically apply to footers:

> [H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. . . . As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that *the title of a statute and the heading of a section cannot limit the plain meaning of the text*. . . . [T]hey cannot undo or limit that which the text makes plain.

*See Giles v. Friendly Fin. Co. of Biloxi*, 185 So. 2d 659, 662 (Miss. 1966) (internal citations omitted) (quoting *Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528-29 (1947)). Additionally, the Supreme Court has stated "[a] statute's caption . . . cannot undo or limit its text's plain meaning." *Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241, 242 (2004).

¶22. We find that the failure to revise the notation after the bill was amended does not create ambiguity in the statute. Further, as the ultimate goal of statutory interpretation is to discern the intent of the Legislature, we find that the chancellor implicitly recognized that intent in stating that "the spirit" of the levy would impose liability on Heath Aviation for use taxes. We find she erred by not following the intent of the legislation in this case. To be sure, there are certain "equities" in favor of Heath Aviation in this case. Having not

12

understood the difference between sales and use tax, it did not incorporate the amount it would be required to pay in use tax in the price it charged customers. However, Heath Aviation has not cited any authority that its tax obligation may be forgiven based on those equitable considerations.[8]

## II. Assessment of Use Tax

¶23. MDOR argues that use tax is owed on the parts Heath Aviation purchased without paying sales tax, and Heath Aviation failed to prove it was exempt from taxation under section 27-65-101(1)(ee). We agree. The assessment of use tax is not, as MDOR points out, dependent upon Heath Aviation's gross income for money its customers paid for services rendered.

¶24. Use tax is administered under section 27-67-31 of the Mississippi Code Annotated (Rev. 2010). The basis for the tax is provided by section 27-67-5 of the Mississippi Code Annotated (Rev. 2010): "There is hereby levied, assessed and shall be collected from every person a tax for the privilege of using, storing or consuming, within this state, any tangible personal property or specified digital product possession of which is acquired in any manner." Use tax is collected at the same rate as sales tax (seven percent). Miss. Code Ann. §§ 27-67-5(a), 27-65-17(1)(a) (Rev. 2010). The user bears the liability of paying the use tax

---

[8] "[E]quity follows the law," and "courts of equity cannot modify or ignore an unambiguous statutory principle in an effort to shape relief." *In re Estate of Smith*, 891 So. 2d 811, 813 (¶5) (Miss. 2005) (quoting *In re Estate of Miller*, 840 So. 2d 703, 708 (¶14) (Miss. 2003)).

due.  Miss. Code Ann. § 27-67-13 (Rev. 2010).

¶25.    Bartlett testified that use tax generally protects Mississippi vendors from unfair competition from out-of-state vendors who are not registered to collect Mississippi sales tax, or those who do not charge their own state's sales tax when selling tangible personal property to a Mississippi business or resident.

¶26.    Here, Heath Aviation purchased tangible personal property from out-of-state vendors for parts, for which no sales tax was paid; therefore, it was potentially liable for use tax on these items.  Only a statutory exemption could relieve the company from tax liability, and there is none.  Prior to 2006, Heath Aviation, as a holder of a sales-tax permit, could purchase its parts wholesale.  Therefore, it did not pay sales tax to Mississippi vendors and was not liable for use tax on the parts it purchased out-of-state.  *See* Miss. Tax D. Reg. 101 (all sales at wholesale, other than the sale of beer, alcoholic beverages, or food and drink for human consumption, are exempt from sales or use tax).  However, once Heath Aviation was no longer subject to collection and payment of sales tax on the gross income of its business, it was not entitled to the exemption for wholesale purchases.

¶27.    Bartlett explained that when Heath Aviation purchased parts from out-of-state vendors that did not collect Mississippi sales tax, and it used those parts in the course of business to repair/service aircraft, it owed seven percent use tax on those parts.  We find that interpretation in accordance with statute.

###    III.    The Impact of Senate Bill 2988 on Heath Aviation's Use Tax

¶28. MDOR maintains that the final version of S.B. 2988 did not exempt parts Heath Aviation purchased during the audit period from sales tax, but both the proposed and final versions of the bill merely removed the service of repairing aircraft from sales tax. Heath Aviation counters that because the Legislature chose to exempt businesses engaging in the repair and service of aircraft from sales tax, it "also logically exempted businesses engaged in repairing and servicing aircraft from paying the use tax on those same *parts* that the business purchases." (Emphasis added). We disagree.

¶29. As previously noted, while the interaction of sales and use tax is complex, the amended statute is not ambiguous. The initial version of S.B. 2988 did seek to exempt sales of parts for repairing/servicing aircraft by amending section 27-65-101(1)(ee) in section 2 of the bill, but reference to this code section was completely deleted in the final version of the bill's short title and text. The proposed amendment to this code section sought to broaden the already existing sales-tax exemption for sales of aircraft-repair parts, to the businesses engaged in providing such repairs by deleting the language specifying the parts be used to repair/service "aircraft registered in Mississippi engaged exclusively in the business of foreign or interstate transportation." Thus, the remaining language of the proposed amended section would exempt from sales tax all "[s]ales of parts used in the repair and servicing of aircraft to businesses engaged in aircraft repair and maintenance."

¶30. Heath Aviation suggests that the Legislature removed the amendment to section 27-65-101(ee) because this amendment accomplished the same intent to eliminate not only sales

15

tax, but also use tax, on parts used to repair aircraft. However, the final plain language of the text in the bill pertaining to section 27-65-23 unambiguously removed taxation from gross income of repairing and servicing aircraft only; it did not impact sales taxation on parts sold to the repair business. The statutory language for the exemption for aircraft parts in section 27-65-101(ee) remained the same, and is limited to parts sold for the repair of certain out-of-state aircraft, which is inapplicable here, as will be discussed below. We are not persuaded by Heath Aviation's argument.

### IV. Section 27-65-101(ee) Tax Exemption

¶31. Heath Aviation argues that its purchases of parts used to repair/service aircraft fit within an exemption from sales tax, and hence use tax, under section 27-65-101(1)(ee). However, MDOR contends, and we agree, that Heath Aviation failed to present sufficient evidence to prove that the airplanes it repaired/serviced met the standard required by this exemption. The chancellor did not rule on this matter.

¶32. As stated earlier, section 27-65-101(1)(ee) exempts from sales tax "[s]ales of parts used in the repair and servicing of aircraft not registered in Mississippi engaged exclusively in the business of foreign or interstate transportation to businesses engaged in aircraft repair and maintenance." Regarding tax exemption and statutory construction:

> Since taxation is the rule and exemption is the exception, and since exemptions from taxation are not favored, [the] general rule is that a grant of exemption from taxation is never presumed; on the contrary, in all cases having doubt as to legislative intention, or as to inclusion of particular property within terms of statute, presumption is in favor of taxing power, and burden is on claimant to prove or establish clearly his right to exemption, bringing himself clearly

16

within terms of such conditions that statute may impose.

*Miss. State Tax Comm'n v. Med. Devices Inc.*, 624 So. 2d 987, 990 (Miss. 1993) (quoting

*United States v. State of Miss.*, 578 F. Supp. 348, 349 (S.D. Miss. 1984)).  The burden of

proof lies with Heath Aviation to provide sufficient evidence of the exemption.

¶33.    The parties disagree on what type of aircraft the exemption references.  Statutory

interpretation is appropriate if a statute is ambiguous or silent on an issue.  *Miss. Methodist*

*Hosp.*, 21 So. 3d at 607 (¶18) (citing *In re Guardianship of Duckett*, 991 So. 2d 1165, 1181

(¶37) (Miss. 2008)).  To determine legislative intent, the best evidence is the text of the

statute, but a "court may also look to the statute's historical background, purpose, and

objectives." *Id.*

¶34.    Bartlett testified about the history behind the exemption, stating it was created in 2005

because the Mississippi Development Authority was trying to recruit a business to locate on

the Mississippi Gulf Coast.  The business would refurbish commercial jetliners, and this

exemption was a tax incentive for them.  MDOR concedes that the exemption may apply to

other airplanes besides commercial jetliners; however, MDOR maintains that Heath Aviation

did not provide sufficient evidence to show that the airplane parts it purchased fit under this

exemption.  We agree.

¶35.    Under section 27-65-101(1)(ee), in order for Heath Aviation to show that it was

exempt from sales tax, and thus use tax, for the parts it bought for repair/service, it must

show: (1) the aircraft were not registered in Mississippi, and (2) the aircraft were engaged

17

exclusively in the business of foreign or interstate commerce. Regarding the registration of aircraft, Heath testified that an airplane must have an address where it is registered and usually that is also where the airplane is hangered/housed. Also, an airplane can be registered at a different location from where the owner lives. Heath testified he checks the registration information of the aircrafts he repairs/services to the information on the Federal Aviation Administration (FAA) website; however, the FAA registry does not always give the information of where the plane is housed, as evidence shows. The registry gives the plane's serial number, manufacturer name, model, engine type, and address of the plane's owner. Therefore, it is unclear where the airplanes Heath Aviation repaired/serviced are registered.

¶36. The parties disagree on the interpretation of the phrase "business of foreign or interstate transportation." Heath claims all of the planes he worked on were engaged in transportation and thus fit the exemption. MDOR claims the exemption is more narrow, and refers to planes used to transport goods, people, or property for a fee; not merely personal use. Heath admitted the use of his customers' planes is unknown, and a large number of his customers fly planes for personal use. Here, the best evidence is from the Legislature itself. In order to fit within the exemption, the aircraft must be engaged *exclusively* in the business of foreign or interstate commerce. Heath has not kept records sufficient to establish the exclusive use of the planes it worked on, and thus is not entitled to the exemption.

## CONCLUSION

¶37. The chancery court erred in exempting Heath Aviation from use-tax assessment on

18

parts it used for the repair/service of aircraft. These parts were tangible personal property Heath Aviation purchased for its business from out-of-state vendors that did not charge sales tax. According to statutory law, Heath Aviation is liable for use tax on these purchases. Further, the company did not establish it was entitled to a tax exemption on these parts under section 27-65-101(1)(ee). MDOR's assessment of use tax against Heath Aviation for $120,114 was neither arbitrary nor capricious, and was supported by substantial evidence. Accordingly, we reverse and render the judgment of the chancery court, and reinstate the use-tax assessment against Heath Aviation.

¶38. **THE JUDGMENT OF THE CHANCERY COURT OF MONTGOMERY COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**