# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-SA-01464-SCT

*BAPTIST MEMORIAL HOSPITAL-DESOTO, INC.*
*d/b/a BAPTIST MEMORIAL HOSPITAL-DESOTO*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF*
*HEALTH AND METHODIST HEALTHCARE-*
*OLIVE BRANCH HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2015 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BARRY K. COCKRELL |
| ATTORNEYS FOR APPELLEES: | CASSANDRA S. WALTER |
| | KATHRYN RUSSELL GILCHRIST |
| | ALLISON TRELOAR JONES |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/30/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     The Mississippi State Department of Health (MSDH) is tasked with addressing Mississippians' healthcare through the State Health Plan and the certificate-of-need regulatory scheme. The State Health Plan sets the goals and criteria for healthcare in the state. And the certificate-of-need process ensures healthcare providers maximize access to quality healthcare, while minimizing cost and inefficiency.

¶2. Citing the 2014 State Health Plan, Methodist Healthcare - Olive Branch Hospital (Methodist) applied for a certificate of need (CON)—seeking approval to perform percutaneous coronary intervention(s), a type of cardiac procedure, at its Olive Branch hospital. But Baptist Memorial Hospital - DeSoto (Baptist)—a competing hospital from the same service area—contested Methodist's application. MSDH held a hearing and ultimately approved Methodist's application. Baptist appealed to the Hinds County Chancery Court. And after review, the chancellor affirmed MSDH's decision. Baptist now appeals to this Court.

¶3. On appeal, we give great deference to MSDH's decisions. And we affirm those decisions if supported by substantial evidence.[1] Here, we find substantial evidence that Methodist's application substantially complied with the State Health Plan and was consistent with its requirements. So we affirm.

## Background Facts and Procedural History

¶4. On July 29, 2010, Methodist applied for and was granted a CON. This CON authorized Methodist to construct a 100-bed, acute-care hospital in DeSoto County, Mississippi. The CON further allowed Methodist to provide diagnostic and therapeutic cardiac catheterizations. The hospital opened August 26, 2013, and began treating patients in December 2013. When Methodist was granted its CON in 2010, the Mississippi State Health Plan allowed healthcare providers to perform therapeutic cardiac catheterization(s) only if the provider had an on-site, open-heart-surgery program. But the State Health Plan

---

[1] *See* **CLC of Biloxi, LLC v. Miss. Dep't of Health**, 91 So. 3d 633, 639 (Miss. 2012), and **Miss. State Dep't of Health v. Rush Care, Inc.**, 882 So. 2d 205, 210-11 (Miss. 2004).

was modified in 2014 to allow percutaneous coronary intervention(s) (PCI)—a type of therapeutic cardiac catheterization—without requiring an on-site, open-heart-surgery program.

¶5.    In response, Methodist—whose on-site, open-heart-surgery program was not yet operational—applied for a separate CON to perform PCIs.  MSDH reviewed Methodist's application and recommended to grant it.  MSDH issued the statutorily required notice to the public and other healthcare providers in the service area.[2]  And Baptist requested a public hearing, which was held on August 14 and 15, 2014.

¶6.    The hearing focused on four of the nine criteria for the acquisition or control of therapeutic cardiac catheterization equipment and/or services, under Section 115.04 of the 2014 State Health Plan:

Criterion 1:   the minimum population base required in the service area(s)

Criterion 2:   the minimum number of diagnostic and therapeutic procedures required annually

Criterion 7:   the requirements for offering PCIs without an on-site, open-heart-surgery program

Criterion 9:   the minimum number of diagnostic catheterization procedures required in the two most recent years, prior to an application, for existing diagnostic catheterization providers seeking to establish a therapeutic cardiac catheterization program

---

[2] Mississippi Code Section 41-7-197 requires written notification from MSDH to other healthcare facilities in the service area and notice by publication to the public in the service area.  A public hearing may be held upon request by an affected party, i.e., other healthcare facilities or private citizens.  Miss. Code Ann. § 41-7-197 (Supp. 2016).

¶7. Don Eicher testified for MSDH, presenting Methodist's application and MSDH's recommendation. He believed Methodist's project was consistent with the State Health Plan's regulatory goals. Methodist presented fourteen witnesses—ranging from physicians, nurses, and emergency-services representatives to the present and former Mayors of Olive Branch and an expert in hospital planning. Baptist offered only one witness—an expert in hospital planning. Thirty-three separate exhibits were presented to the hearing officer.

¶8. The hearing officer found that Methodist's application substantially complied with the State Health Plan. And he submitted these findings to the Mississippi State Health Officer, who agreed with the recommendations and granted Methodist a CON.

¶9. Upset with this decision, Baptist appealed to the Hinds County Chancery Court. Both Methodist and Baptist submitted briefs to the chancellor. On appeal, Baptist only contested MSDH's interpretation and application of Criteria 1 and 9 of Section 115.04 of the 2014 State Health Plan.[3] Baptist argued MSDH had wrongly concluded the minimum-population

---

[3] Under Section 115.04 of the 2014 State Health Plan, Criterion 1 states in full:

> The applicant shall document a minimum population base of 100,000 in the CC/OHSPA where the proposed therapeutic cardiac catheterization equipment/service is to be located. Division of Health Planning and Resource Development population projections shall be used.

And Criterion 9 states in full:

> An applicant proposing the establishment of therapeutic cardiac catheterization services, who is already an existing provider of diagnostic catheterization services, shall demonstrate that its diagnostic cardiac catheterization unit has been utilized for a minimum of 300 procedures per year for the two most recent years as reflected in the data supplied to and/or verified by the Mississippi State Department of Health.

criterion was met and improperly waived the minimum-procedure criterion. But the chancellor disagreed.

¶10. For Criterion 1, the chancellor found Methodist had properly documented the population in the proposed service area. At the time there were 311,111 people, with substantial future population growth. And MSDH was not required to conduct a market-share analysis to divide the population between Baptist and Methodist. The chancellor held Baptist failed to demonstrate MSDH's chosen methodology was arbitrary or capricious.

¶11. The chancellor also found MSDH could reasonably conclude Criterion 9 did not disqualify providers from seeking a therapeutic catheterization program, if the provider's diagnostic catheterization program was less than two years old. This determination was deemed reasonable, since Criterion 9 does not require an applicant to be a diagnostic catheterization provider for two years before applying for a therapeutic catheterization program. Alternatively, the chancellor found Criterion 9 inapplicable because Methodist had an existing therapeutic cardiac catheterization program. She found Criterion 9 deals solely with providers seeking to establish such a program. As the chancellor saw it, Methodist was already in compliance with the State Health Plan because its therapeutic catheterization program had already been approved. Thus, it did not have to meet the Criterion 9 requirement. Based on these findings, the chancellor affirmed MSDH's decision. Baptist has now appealed to this Court.

**Discussion**

5

¶12. Mississippi Code Section 41-7-193(1) (Supp. 2016) governs CON approvals. The statute is clear that no CON shall be granted unless it has been "reviewed for consistency with the specifications and criteria established by the State Department of Health and *substantially complies* with the projection of need as reported in the State Health Plan in effect at the time . . . ." Miss. Code Ann. § 41-7-193(1) (emphasis added).

¶13. This Court's standard of review for administrative agency decisions applies to CON appeals:

> The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal.

Miss. Code Ann. § 41-7-201(2)(f) (Supp. 2016). We afford "great deference" to the decisions of hearing officers and the State Health Officer. *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 976 (Miss. 1999) (citations omitted). But if MSDH's decision is not based on substantial evidence, "it necessarily follows that the decision is arbitrary and capricious." *Queen City Nursing Ctr., Inc. v. Miss. State Dep't of Health*, 80 So. 3d 73, 78 (Miss. 2011) (quoting *Natchez Cmty. Hosp.*, 743 So. 2d at 977).

¶14. "The burden of proof rests on the challenging party to prove that MSDH erred." *Jackson HMA, Inc. v. Miss. State Dep't of Health*, 822 So. 2d 968, 970 (Miss. 2002) (citing *Delta Reg'l Med. Ctr. v. Miss. State Dep't of Health*, 759 So. 2d 1174, 1176 (Miss. 1999)). And this Court will affirm a decision by MSDH, despite an imperfect analysis or review, where the decision is supported by substantial evidence. *See CLC of Biloxi, LLC v. Miss.*

***Dep't of Health***, 91 So. 3d 633, 639 (Miss. 2012) (MSDH's decisions should be affirmed where supported by substantial evidence, even where it allegedly failed to follow its own regulations or employed imperfect methods); *see also* ***Miss. State Dep't of Health v. Rush Care, Inc.***, 882 So. 2d 205, 210-11 (Miss. 2004) (this Court upholds MSDH's decisions based on substantial evidence, even when imperfect analysis is used).

¶15.    On appeal to this Court, Baptist attacks the chancellor's decision, again claiming MSDH's interpretation and application of Criteria 1 and 9 of Section 115.04 of the 2014 State Health Plan were arbitrary and capricious.  But this Court finds Methodist's CON application substantially complied with the 2014 State Health Plan, and that MSDH's findings are supported by substantial evidence.  Thus, for these reasons, we affirm.

## I.    Criterion 1 - Minimum Population Base

¶16.    While different methodologies exist to measure whether a CON applicant meets the minimum-population criterion, the ultimate goal "is to determine need." ***HTI Health Servs. of Miss., Inc. v. Miss. State Dep't of Health***, 603 So. 2d 848, 853 (Miss. 1992).  Baptist, however, pitches a very narrow view of how it believes MSDH should determine need.  As Baptist sees it, MSDH has a "longstanding practice" of using market-share analysis.  So it was required to apply a market-share analysis to the service area population to ensure Methodist's market share met the 100,000 mark.  In other words, Baptist insists market-share analysis is mandatory.  As support, Baptist cites cases where this Court affirmed MSDH's use of market-share analysis for minimum-population calculations.  But what Baptist misses

is that those cases say market-share analysis is an allowable method—not the sole method to consider the minimum-population criterion.[4]

¶17.    Indeed, this Court has never mandated MSDH perform a market-share analysis when considering minimum-population criteria.  Nor does the applicable State Health Plan support this view.  Paragraph 7 of Section 115.02 of the 2014 State Health Plan explains MSDH *may* use different methodologies to analyze a CON application, depending upon the circumstances.[5]    Furthermore, this Court has affirmed MSDH's use of a different methodology based on the circumstances of that application.  *Miss. State Dep't of Health v. Sw. Miss. Reg'l Med. Ctr.*, 580 So. 2d 1238, 1241-42 (Miss. 1991).  So, despite Baptist's protestations, simply because MSDH has applied a certain methodology in the past, its use of an alternative method is not itself arbitrary or capricious.[6]

_____

[4] For example, Baptist cites *HTI Health Servs. of Miss., Inc.*, 603 So. 2d 848 (the use of market-share methodology does not exceed MSDH's statutory authority); *Sw. Miss. Reg'l Med. Ctr.*, 580 So. 2d 1238 (the minimum-population criterion aims to prevent a healthcare program from being established that will be underutilized); *Miss. State Dep't of Health v. Golden Triangle Reg'l Med. Ctr.*, 603 So. 2d 854 (Miss. 1992) (MSDH's use of market-share methodology to review certificate of need applications is not arbitrary or capricious); and *Delta Reg'l Med. Ctr.*, 759 So. 2d 1174 (this Court has consistently upheld MSDH's market-share methodology).

[5] Paragraph 7 of Section 115.02 of the 2014 SHP states, in part:

At its discretion, the Department of Health may use market share analysis and other methodologies in the analysis of a CON application . . . [t]he Department shall not rely upon market share analysis or other statistical evaluations if they are found inadequate to address access to care concerns.

[6] In *HTI Health Services*, this Court noted the State Health Plan "does not identify specific methods which must be used to determine if the requirements of the Plan have been met."  *HTI Health Servs. of Miss., Inc.*, 603 So. 2d at 853.  Rather, we recognized, "[t]he methodology used to determine or measure population base in any given case should not be

8

¶18.   The objectives of the 2014 State Health Plan were to increase cardiac services for poor, minority, and rural populations.  And the 2014 State Health Plan emphasizes that certain methodologies, such as population base and optimum capacity at existing providers, have been ineffective to meet Mississippi's cardiac-care needs.  Both MSDH and the chancellor found Methodist's minimum-population methodology substantially complied with objectives of the 2014 State Health Plan.  And we too find substantial compliance.

## II.      Criterion 9 - Minimum Annual Diagnostic Catheterizations

¶19.   Criterion 9 of Section 115.04 requires an existing provider of diagnostic cardiac catheterizations, seeking to establish a therapeutic catheterization program, perform a minimum of 300 diagnostic catheterizations each year for two years prior to its application.[7]

¶20.   Criterion 9 applies to providers of diagnostic catheterizations *proposing the establishment of a therapeutic catheterization program*.  And here, Methodist is not seeking to establish a therapeutic catheterization program—it already has one.  Rather, Methodist is seeking permission to operate a PCI program without having a fully operational on-site,

---

carved in granite; instead, some flexibility is required." *Id*.  The prudent approach is to "utilize a methodology that will accommodate the various and sundry circumstances found in each individual case." *Id*.  Thus, it is quite apparent MSDH has a good bit of discretion and flexibility in making these calls.

[7] MSDH determined Criterion 9 should be waived until the hospital reached its third year of operation.  At that time, the number of diagnostic procedures should be examined.  However, the hearing officer found Methodist had met the requirements of Criterion 9 because it showed projections it would meet minimum-procedure requirements within three years.  Notwithstanding these differing analyses, we affirm decisions by MSDH based on substantial evidence, despite imperfect analysis or review. *See CLC of Biloxi, LLC*, 91 So. 3d at 639; *see also Rush Care, Inc.*, 882 So. 2d at 210-11.

open-heart-surgery program. This is permissible under the 2014 State Health Plan, provided Criterion 7 is met—which is not at issue. Simply put, Criterion 9 does not apply here.

¶21. We therefore find that Methodist "substantially complie[d] with the projection of need as reported in the state health plan in effect at the time . . . ." Miss. Code Ann. § 41-7-193(1). And Baptist has failed to show MSDH's decision that Methodist substantially complied with the 2014 State Health Plan was not based on substantial evidence. We therefore affirm.

**Conclusion**

¶22. MSDH's analysis is supported by substantial evidence, and Baptist failed to meet its burden of proof. This Court therefore affirms MSDH's grant of a CON to Methodist to provide PCI services.

¶23. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, BEAM AND CHAMBERLIN., JJ., CONCUR.**