# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CC-00427-SCT

*MISSISSIPPI STATE DEPARTMENT*
*OF HEALTH AND REGENCY HOSPITAL*
*COMPANY, LLC*

*v.*

*RUSH CARE, INC.*
*d/b/a THE SPECIALTY*
*HOSPITAL OF MERIDIAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/26/2003 |
| TRIAL JUDGE: | HON. PATRICIA D. WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JULIE ANN BOWMAN |
| | ANDY LOWRY |
| | THOMAS L. KIRKLAND, JR. |
| | SARAH E. BERRY |
| ATTORNEYS FOR APPELLEE: | KATHRYN RUSSELL GILCHRIST |
| | CHRISTOPHER A. SHAPLEY |
| | J. RICHARD BARRY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 09/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This matter is before the Court on appeal from a judgment of the Chancery Court of

the First Judicial District of Hinds County reversing the Mississippi State Department of

Health's decision to grant a certificate of need to Regency Hospital Company, LLC, for the

establishment of a 40-bed long-term acute care hospital in Meridian.  We reverse the

chancellor's judgment and render judgment reinstating the Mississippi State Department of Health's issuance of the certificate of need.

## FACTS

¶2. Regency filed an application for a certificate of need ("CON") for the establishment of a 40-bed long-term acute care hospital ("LTAC")[1] in Meridian. Three hospitals are located in Meridian: Riley Hospital, Rush Hospital and Jeff Anderson Regional Medical Center.[2] Rush currently operates an LTAC (The Specialty Hospital of Meridian) within its hospital building. Regency's application proposed that 40 LTAC beds would be located on the second floor of Riley, but that the LTAC hospital would be separate and independent from Riley. At the time the CON application was filed, Riley operated 40 beds as acute care medical-surgical beds on its second floor. Regency contends that the proposal therefore would not increase the total number of licensed hospital beds in the Meridian area.

¶3. Miss. Code Ann. §§ 41-7-171 to -209 (Rev. 2001) provides that the Mississippi State Department of Health ("MDH") is the only agency to administer and supervise all health planning responsibilities for the State. Miss. Code Ann. § 41-7-193 (Rev. 2001) requires, inter alia, that a "certificate of need shall not be granted or issued to any person for any proposal, cause or reason, unless the proposal has been reviewed for consistency with the specifications and the criteria established by the State Department of Health and substantially

---

[1]LTAC hospitals provide long-term acute care for patients, as opposed to those patients who are admitted to undergo a procedure and a short-term recovery therefor. Changes in Medicare coverage discouraging lengthy hospital stays have created the need for LTAC hospitals.

[2]Jeff Anderson supports Regency's application for a CON.

complies with the projection of need as reported in the state health plan in effect at the time the application for the proposal was submitted." The goals of the State Health Plan are to provide some cost containment; to improve the health of Mississippi residents; to increase the accessibility, acceptability, continuity, and quality of health services; and to prevent unnecessary duplication of health resources. The Plan requires that an application for an LTAC facility contain at least 450 examples of clinically appropriate restorative care admissions with an average length of stay of 25 days and a projection of financial feasibility by the end of the third year of operation.

¶4. After the MDH approved Regency's CON, Specialty filed suit in the Chancery Court of the First Judicial District of Hinds County, to contest the approval of the CON. After an evidentiary hearing, the chancellor reversed the MDH's decision finding that it was arbitrary and capricious and was not supported by substantial evidence. Specifically, the chancellor found no credible evidence to support the MDH's findings that Regency's proposed LTAC would admit 100% of the Meridian-area patients that it listed as LTAC-eligible and that the proposed LTAC would not adversely impact Specialty's existing LTAC.

**STANDARD OF REVIEW**

¶5. The standard of review for an appeal of a final order of the MDH is controlled by Miss. Code Ann. § 41-7-201(2)(f) (Rev. 2001), which provides in part:

> The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal . . . .

3

This law constitutes nothing more than a statutory limitation upon the scope of judicial review of administrative agency decisions, which is the arbitrary and capricious standard. *Delta Reg'l Med. Ctr. v. Miss. State Dep't of Health*, 759 So. 2d 1174, 1176 (Miss. 2000) (citing *Magnolia Hosp. v. Miss. State Dep't of Health*, 559 So. 2d 1042, 1044 (Miss. 1990)). Decisions of administrative agencies are given great deference. *Delta Reg'l*, 759 So. 2d at 1176 (citing *Melody Manor Convalescent Ctr. v. Miss. State Dep't of Health*, 546 So. 2d 972, 947 (Miss. 1989)). The burden of proof rests on the challenging party to prove that the MDH erred. *Delta Reg'l*, 759 So. 2d at 1176 (citing *Melody Manor*, 546 So. 2d at 947).

## DISCUSSION

I.    **WHETHER REGENCY'S CON APPLICATION WAS IN SUBSTANTIAL COMPLIANCE WITH THE NEED METHODOLOGY FOR THE ESTABLISHMENT OF AN LTAC HOSPITAL.**

¶6.    Regency contends that the chancery court erred in reversing the MDH's approval of its CON because the application was in substantial compliance with the 2002 Mississippi State Health Plan, with the General Considerations stated in Chapter 8 of the CON Review Manual, and with current federal and state rules and regulations. Specialty argues that the CON application was not in substantial compliance with the Plan's need requirement because Regency's projected average length of stay ("ALOS") numbers were unsupported; and not all of the patients in the diagnostically related group ("DRG")[3] submitted by Regency were clinically appropriate. The Plan requires that an application for an LTAC facility contain at

_____

[3]DRGs are diagnosis codes promulgated by Medicare.

4

least 450 examples of clinically appropriate restorative care admissions with an average length of stay of 25 days.

*Clinically Appropriate DRGs*

¶7.    Regency listed 241 probable admissions from Riley.  To acquire this number, Regency considered patients actually hospitalized from May 1, 2000, through May 31, 2001. Regency listed 438 probable admissions from Jeff Anderson.  To arrive at this number, Regency looked at data from Jeff Anderson contained in the American Hospital Guide.[4]  It then estimated a need for 59 additional LTAC beds in the Meridian area, excluding any patients which might come from Meridian's third hospital, Rush.  Located within the Rush hospital building, Specialty gives admission preference to Rush patients due to its contractual obligations with Rush.

¶8.    Regency also points out the need in the Meridian area for additional LTAC beds is indicated by the fact that Specialty's number of beds has increased greatly since the unit's establishment in 1996:

| Year | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|---|---|
| Number of LTAC Beds | 20 | 40 | 40 | 40 | 49 | 49 | 49 |
| Total Occupancy | 71% | 55% | 58% | 75% | 91.9% | 93.5% | 96.5% |

---

[4]Regency explains that the American Hospital Guide is a highly reputable compilation of hospital data which contains actual patient census data for Jeff Anderson.

| LTAC Occupancy | 71% | 55% | 58% | 71% | 61% | 71% | 77% |
|---|---|---|---|---|---|---|---|

¶9.  Regency also points out that Specialty has announced its intention to expand again in the next few years.  Also, Riley's CEO has stated that Riley has had trouble getting its LTAC-eligible patients into an LTAC facility.[5]

¶10.  Specialty responds that its LTAC unit has never been full and that Regency erroneously assumed that *all* of the patients from Riley and Jeff Anderson who had LTAC-compatible DRGs would actually be admitted to an LTAC.  A Specialty vice-president testified at the hearing that, even if a patient has an LTAC-compatible DRG, he or she must still meet certain criteria under federal guidelines.  Regency's own witness also confirmed this statement.  Because of the federal government's extra admission criteria, Specialty has admitted only 30% of patients with LTAC-compatible DRGs who have been referred to the LTAC by their physicians.

¶11.  We find that the clinically-appropriate DRGs presented by Regency in the CON application were supported by substantial evidence.  The Plan requires that an application for an LTAC facility contain at least 450 examples of clinically appropriate restorative care admissions.  Regency listed 241 probable admissions from Riley and 438 probable admissions from Jeff Anderson.  These probable admissions were based on actual

---

[5]Regency argues that there is a perception among Meridian physicians that Specialty has a "closed medical staff," which means that it does not admit patients from physicians who are not on staff at Specialty.  At the hearing, however, Specialty's representative testified that Specialty has never had a closed medical staff, and that no physician who had applied for privileges at Specialty has ever been refused.  Specialty's representative also provided evidence that Specialty has had admissions from Riley and Jeff Anderson.

hospitalizations. At the hearing, Regency's representative testified that it had, since the filing of the CON application, acquired patient data from Jeff Anderson and that this data showed that Jeff Anderson had 833 patients with LTAC-appropriate DRGs. The chancellor therefore erred when she substituted her judgment for that of the MDH.

*Average Length of Stay*

¶12. The Plan requires that an application for an LTAC facility contain at least 450 examples of clinically appropriate restorative care admissions with an average length of stay (ALOS) of 25 days. The MDH does not provide a methodology with which applicant hospitals may calculate an ALOS.

¶13. Regency asserts that each LTAC-appropriate patient on its list would have an ALOS of 29 days. It bases this conclusion on the fact that Riley LTAC-appropriate patients had an ALOS of 18.2 days and Jeff Anderson LTAC-appropriate patients had an ALOS of 17 days. Regency then assumed that these patients would have stayed in the hospital longer had the respective hospital not discharged the patients due to Medicare's cut-off of benefits after a short period of time. It also supports this conclusion with Medicare federal regulations which state that the 97 DRGs listed by Regency had an "application yield" of 31 days.[6] *See* 42 C.F.R. Parts 412, 413 & 476, Table 3.

¶14. We find that Regency's calculation of average length of stay was supported by substantial evidence and that the chancellor erred when she substituted her judgment for that of the MDH.

---

[6]Of course, again, the 97 DRGs used by Regency have not been identified, but Medicare has listed 527 DRGs which are suitable for LTAC.

## II. WHETHER REGENCY'S PROPOSED LTAC WILL RESULT IN AN ADVERSE EFFECT ON EXISTING HEALTH SYSTEMS OR IN UNNECESSARY DUPLICATION OF HEALTH SERVICES.

¶15.	Specialty contends that the Regency CON will adversely affect it because, if Regency's statistics are realized as projected, Specialty will lose 30% of its patient base and $10 million in gross revenues.  It asserts that if it loses $10 million in gross revenues, Rush will have to close eight rural health clinics.  However, Specialty presented no evidence to support these allegations.  In fact, it admitted that no financial analysis had been undertaken.[7]

¶16.	Instead, Specialty's own occupancy percentages and history of growth show that the market for LTAC in the Meridian area is growing.  Beginning with only 20 beds, Specialty now has 49,  and its occupancy percentage has pretty much stayed constant with the increase of beds.[8]

¶17.	On the other hand, other LTACs in Mississippi have been established or are in the process of being established.  The fact that the trend toward the establishment and operation

---

[7]The chancellor found that, assuming Regency's premise that its patients would come from Riley and Jeff Anderson, and that 75% of Specialty's patients came from Rush and 25% from Riley and Jeff Anderson, Specialty would lose that 25% from Riley and Jeff Anderson, thereby resulting in financial loss.  However, the chancellor's assumptions are impermissible under Mississippi law because she drew inferences from inferences. *See Masonite Corp. v. Hill*, 170 Miss. 158, 154 So. 295 (1934) (An inference may be based upon another inference, but where ultimate inference has become only a more or less strong possibility, the proof is insufficient to support a judgment).

[8]The percentages dipped every time more beds were added, which is to be expected, but they bounced back to the average rate within a year or two.

of LTACs is growing will have an impact on the Meridian market. Some of those who now utilize Specialty for long-term acute care might go elsewhere (Jackson or Hattiesburg).

¶18. We find that the chancellor should have affirmed the MDH's findings that Regency's LTAC hospital would not adversely affect other facilities because the MDH's findings were supported by substantial evidence and were not arbitrary and capricious. We have upheld the MDH's findings even where an imperfect analysis is used:

> However, the Chancery Court found the Department's method of population calculation must give way to use of an actual study of patient origins for a period of a year. In effect, that Court substituted its method of measuring the population criteria with that of the Department[]. While the Department's method of population analysis may be imperfect, it hardly approaches an arbitrary or capricious action. The Chancery Court erred in substituting its judgment for [that of the Department].

*Miss. State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.*, 580 So. 2d 1238, 1242 (Miss. 1991).

## CONCLUSION

¶19. We find that the Mississippi State Department of Health's grant of a certificate of need to Regency Hospital Company, LLC, was supported by substantial evidence and was not arbitrary and capricious. The learned chancellor erred in concluding otherwise. We therefore reverse the chancery court's judgment and render judgment here reinstating the MDH's decision to grant a certificate of need to Regency.

¶20. **REVERSED AND RENDERED.**

**SMITH, C.J., COBB, P.J., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. CARLSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. DIAZ, J., NOT PARTICIPATING.**

**CARLSON, JUSTICE, DISSENTING:**

¶21.    Because I find that the judgment of the Chancery Court of the First Judicial District of Hinds County reversing the Mississippi Department of Health's decision to grant a certificate of need to Regency Hospital Company, LLC, for the establishment of a 40-bed long-term acute care hospital was eminently correct, I must respectfully dissent.

¶22.    The majority determines that Regency's CON application was in substantial compliance with Miss. Code Ann. §§ 41-7-171 to -209 (Rev. 2001 & Supp. 2003) and its methodology for the establishment of a long-term acute care hospital (LTAC). I must disagree. The State Health Plan, requires that an application for an LTAC must contain at least 450 examples of appropriate admissions in diagnostically related groups (DRGs). These admissions must have an average length of stay (ALOS) of 25 days. Regency failed to provide evidence that it substantially complied with either requirement.

¶23.    Regency contends that it would receive 241 probable admissions from Riley Hospital and 438 probable admissions from Jeff Anderson Regional Medical Center. Specialty Hospital testified that in over seven years of operating an LTAC, only 30% of patients with LTAC-compatible DRGs were admitted to the LTAC. The reliability of Specialty's 30% LTAC admission rate is proven by Regency's own exhibit regarding Riley's Population-Based Long Term Acute Care Model which shows that nationally only 5% to 35% of patients with LTAC-appropriate diagnoses are actually admitted to an LTAC. Using this model, 35% of Regency's probable admissions would not constitute the 450 admissions

10

required under the plan. Even if the almost 700 LTAC-compatible DRGs[9] it listed had a 50% admission rate, Regency still could not show that it would have the 450 admissions required under the Plan. Also, Regency failed to produce a list of the 97 DRGs upon which it relied to qualify the 679 probable admissions. Because it cannot be determined from the record if the 97 DRGs considered by Regency to be LTAC-appropriate are indeed LTAC-appropriate, there is no alternative other than to hold that the evidence relied upon by Regency to establish the need of more LTAC beds in the Meridian area is unreliable.

¶24.    Regency further asserts that each LTAC-appropriate patient on its list would have an ALOS of 29 days. Since there is no evidence in the record to support this conclusion, it is based on opinion, estimates and speculation.  Unsupported statements do not constitute substantial evidence of compliance with minimum usage requirements as required for CON approval. ***Miss. State Dep't of Health v. Natchez Cmty. Hosp.***, 743 So. 2d 973, 978 (Miss. 1999).

¶25.    It must also be noted that no other city in Mississippi has more than one LTAC.[10]  In fact, the only city in the United States which has two LTACs is Akron, Ohio.

¶26.    Therefore, I would find that Regency did not support its assertions of need based on clinically appropriate DRGs or ALOS.  There was no evidence in the record that Specialty's

---

[9]At the hearing, Regency's representative testified that it had, since the filing of the CON application, acquired patient data from Jeff Anderson and that this data showed that Jeff Anderson had 833 patients with LTAC-appropriate DRGs.  However, even 35% of 1074 (Jeff Anderson's 833 plus Riley's 241), is 376, less than the 450 required under the Plan.

[10]At the MDH hearing, an MDH officer testified that, at that time, there were four LTACs in the state: one each in Jackson, Meridian, Gulfport and Biloxi.

occupancy percentage had ever been 100%, that Specialty ever had a waiting list for patients, or that Meridian-area LTAC-appropriate patients were going anywhere but Specialty for long-term care. Because the chancellor correctly reversed the MDH's approval of Regency's CON application, I would affirm the judgment of the Chancery Court of the First Judicial District of Hinds County. Therefore, I respectfully dissent.

**GRAVES, J., JOINS THIS OPINION.**