# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-SA-00877-SCT

*GREENWOOD LEFLORE HOSPITAL,*
*GREENWOOD SPECIALTY HOSPITAL, L.L.C.*
*AND GREENWOOD SPECIALTY HOSPITAL II,*
*L.L.C. d/b/a GREENWOOD SPECIALTY*
*HOSPITAL*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF*
*HEALTH AND DELTA REGIONAL MEDICAL*
*CENTER*

DATE OF JUDGMENT:               04/17/2007
TRIAL JUDGE:                    HON. J. DEWAYNE THOMAS
COURT FROM WHICH APPEALED:      HINDS COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:        BARRY K. COCKRELL
ATTORNEYS FOR APPELLEES:        JEFFREY SCOTT MOORE
                                DONALD E. EICHER, III
                                DARRELL JAY SOLOMON
NATURE OF THE CASE:             CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                    AFFIRMED - 04/17/2008
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     The Hinds County Chancery Court approved the Mississippi State Department of

Health's decision to award a certificate of need to Delta Regional Medical Center. The

chancellor held that the department's decision was supported by substantial evidence and

was not contrary to the manifest weight of evidence. We affirm.

**STATEMENT OF FACTS AND PROCEEDINGS**

¶2. Delta Regional Medical Center ("DRMC") is a 405-bed, short-term, general acute-care, non-profit hospital located in Greenville, Mississippi. DRMC's main campus is licensed for 228 acute-care beds, and its west campus is currently licensed for 177 acute-care beds.

¶3. On December 1, 2005, DRMC filed an application with the Mississippi State Department of Health (MSDH) seeking a certificate of need ("CON"), i.e., regulatory approval, to establish a forty-bed, long-term, acute-care hospital ("LTACH") at its West Campus.[1] DRMC proposed in its CON application to establish and operate a "hospital within a hospital" (the "Project") by contracting with Allegiance Health Management ("Allegiance") to lease the forty beds from DRMC and operate the LTACH.[2] DRMC's application represented that the capital cost of the Project would be $1,076,000. It further represented that the Project would be financially feasible, with a projected net income of $1,891,876 by the end of the LTACH's third year of operation.

¶4. There are three levels of review within the MSDH: (1) the MSDH's Division of Health Planning and Resource Development (the "staff"); (2) the hearing officer; and (3) the state health officer. In February 2006, the staff issued its analysis, in which it concluded that the Project was in substantial compliance with the *FY 2006 Mississippi State Health Plan (the "SHP"), the Mississippi Certificate of Need Review Manual, 2000 Revision,* and

---

[1]LTACHs provide long-term acute care for patients, as opposed to those patients who are admitted to undergo a procedure and a short-term recovery thereafter. Changes in Medicare coverage discouraging lengthy hospital stays have created the need for LTACH.

[2]DRMC supplemented its application by providing additional information to the MSDH.

all other relevant rules and procedures of the MSDH. Based on its conclusion that the project would meet the requirements set out by the MSDH, including the "Need Criterion," which requires the applicant to demonstrate that its proposed facility will have a minimum of 450 annual clinically-appropriate restorative-care admissions with an average length of stay of twenty-five days, the staff recommended approval of DRMC's application.

¶5. Subsequently, Greenwood Specialty Hospital ("GSH"), Select Specialty Hospital-Jackson ("Select") and Greenwood Leflore Hospital ("GLH") filed requests for a hearing during the course of review pursuant to Mississippi Code Annotated Section 41-7-197(2) (Rev. 2005). MSDH later held public hearings as requested by GSH, Select and GLH.

¶6. Following the submission of proposed findings by both parties, the Hearing Officer issued his Executive Summary, finding that "DRMC provided substantial and credible evidence" to fulfill the "need criterion," and recommending that the State Health Officer approve the application. The State Health Officer agreed and issued a Final Order, approving the application and granting the CON.

¶7. GLH, GSH and Greenwood Specialty Hospital II, a successor-in-interest to GSH, appealed to the Chancery Court of Hinds County, alleging the MSDH's decision (1) was not supported by substantial evidence and (2) was contrary to the manifest weight of evidence. The chancellor affirmed the decision of the MSDH, holding it was "supported by substantial evidence and was not arbitrary or capricious." They now appeal to this Court, raising an additional, third issue that the MSDH's decision should be reversed and remanded due to new federal regulations which directly impact the project.

3

## ANALYSIS

¶8. The standard of review for the appeal of a final order of the Mississippi Department of Health is controlled by Mississippi Code Annotated Section 41-7-201(2)(f) (Rev. 2005), which states in pertinent part:

> The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal . . . .

This law is "nothing more than a statutory restatement of familiar limitations upon the scope of judicial review of administrative agency," which is the arbitrary-and-capricious standard. *Miss. State Dep't of Health v. Natchez Community Hosp.*, 743 So. 2d 973, 976 (Miss. 1999) (*citing* *Magnolia Hosp. v. Miss. State Dep't of Health*, 559 So. 2d 1042, 1044 (Miss. 1990)).

¶9. Additionally, this Court has pointed out that "[o]ur Constitution does not permit the judiciary of this state to retry de novo matters on appeal from administrative agencies." *Miss. State Bd. of Nursing v. Wilson*, 624 So. 2d 485, 489 (Miss. 1993). Therefore, the decisions of administrative agencies are given great deference, and the burden of proof rests on the challenging party to prove that the department erred. *Miss. State Dep't of Health v. Rush Care, Inc.*, 882 So. 2d 205, 208 (Miss. 2004) (*citing* *Delta Reg'l Med. Ctr. v. Miss. State Dep't of Health*, 759 So. 2d 1174, 1176 (Miss. 2000)). This Court has further held that the same deference due  the department's finding must also be given to the chancellor who, on

appeal, affirms and adopts the department's finding. ***Ricks v. Miss. State Dep't of Health***, 719 So. 2d 173, 177 (Miss. 1998).

**I.**

¶10.    The appellants contend that the chancellor erred in affirming MSDH's approval of DRMC's CON because there is no substantial evidence supporting the finding that DRMC met the twin requirements of 450 LTACH admissions with an average length of stay of twenty-five days. DRMC presented three separate methodologies to prove the need for an LTACH in Greenville. Employing the first methodology, DRMC listed 1,571 restorative care admissions. To arrive at this number, DRMC examined discharges attributable to twenty-six specific Diagnosis-Related Groups ("DRGs") from its total discharges over a twelve-month period.[3] Rock Bordelon, an expert in the field of operation of LTACHs, testified that the industry standard is to consider twenty-five to thirty-five percent of this LTACH admission pool, which provides the required 450 LTACH admissions. DRMC also added that this number did not include the potential LTACH referrals from other hospitals located in General Hospital Service Area Number 2 (GSHA 2) and surrounding areas that wrote letters evidencing support for DRMC.

¶11.    Using the second methodology, DRMC arrived at a number greater than the required 450 LTACH beds by employing a ten-to-one ratio of the total number of licensed beds to

---

[3]DRGs are diagnosis codes promulgated by Medicare. The twenty-six DRGs come from the State of New Jersey's certificate of need process. DRMC uses this number as a starting point, because that list is a conservative one with respect to patients who frequently require LTACH services.

determine LTACH bed need.[4] Ultimately, by applying the third methodology,[5] DRMC identified more than 400 LTACH-eligible patients at its unit. To acquire this number, DRMC considered patients hospitalized over a twelve-month period and took three to five percent of that figure. When considering admissions from surrounding area hospitals, the number is even higher.

¶12. This Court has stated that "substantial evidence" as used in Mississippi Code Annotated Section 41-7-201(2)(f) means "more than a scintilla or a suspicion." *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 977 (Miss. 1999) (*citing Miss. Real Estate Comm'n v. Anding*, 732 So. 2d 192, 196 (Miss. 1999)). Further, an administrative agency's decision is "arbitrary and capricious" when it is not made "according to reason and judgment . . . [but] in a whimsical manner." *Id.* at 977 (*citing Burks v. Amite County Sch. Dist.*, 708 So. 2d 1366, 1370 (Miss. 1998)). Considering the entire data and the three methodologies,[6] we hold that DRMC presented "substantial evidence" to satisfy the "need criterion." Consequently, MSDH's decision to award DRMC's CON is affirmed.

¶13. Also, the appellants' argument — that "DRMC either presented data showing patients with medical conditions having *potential* for an LTACH admission (without taking into

---

[4]DRMC admitted that it had 405 licensed beds, which would support a forty-bed LTACH after employing the ten-to-one ratio method. Additionally, the surrounding areas had approximately 700 beds, which necessitated a seventy-bed LTACH. GHSA 2 also had a deficit of ninety LTACH beds.

[5]This particular method has been previously applied by this Court. *Miss. State Dep't of Health v. Rush Care, Inc.*, 882 So. 2d 205, 210 (Miss. 2004).

[6]Mr. Bordelon testified that all three methodologies are industry-standard methods to determine LTACH needs.

account the average length of stay), or patient data showing long lengths of stay of certain patient groups (without taking into account whether they were appropriate candidates for admission to an LTACH)"— is erroneous. The SHP does not require a specific methodology by which applicants must prove the requirements; however, it should be a reasonable one. This Court previously has acknowledged that MSDH "does not provide a methodology with which applicant hospitals may calculate an [average length of stay]." ***Miss. State Dep't of Health v. Rush Care, Inc.***, 882 So. 2d 205, 209 (Miss. 2004). Further, this Court has upheld MSDH's findings even when an imperfect analysis is used, because "[w]hile the Department's method of . . . analysis may be imperfect, it hardly approaches an arbitrary or capricious action." *Id.* at 210 (*quoting **Miss. State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.***, 580 So. 2d 1238, 1242 (Miss. 1991)).

¶14. At the chancery court hearing, the chancellor recognized that the three methodologies employed by DRMC factor in both restorative-care admissions and average length of stay. This Court agrees with the chancellor's examination that the average length of stay is "intrinsically embedded" in each of these three methodologies. Therefore, this Court finds that MSDH's decision is supported by substantial evidence and is not contrary to the manifest weight of evidence.

**II**.

¶15. Appellants also ask us to reverse the chancellor's holding and remand this proceeding to the chancery court because of new federal regulations that have been issued since the

7

chancery court's order.[7] The particular regulations, they argue, impose a "hard limitation" on the percentage of patient referrals that an LTACH may receive from any one hospital and effectively cut the proposed number of patients DRMC will receive in half.

¶16. However, the appellants are barred from raising this factual matter on appeal outside the record. *Commercial Credit Equip. Corp. v. Kilgore*, 221 So. 2d 363, 367 (Miss. 1967). This Court consistently has refused to overturn factual findings based on factual matters not found within the record. *In re City of Jackson*, 912 So. 2d 961, 971 (Miss. 2005). Appellants erroneously argue that this is a change in law, not in facts. Unless the federal regulations clearly state that they effectively would cut the proposed number in half, it is merely a factual speculation to determine what effect the special payment provisions would have on patient referrals. Therefore, this Court will not overturn the chancellor's holding and remand based on facts outside the record that occurred subsequent to the initial appeal.

## CONCLUSION

¶17. Applying, as we must, a strict standard of review, we hold that the chancellor did not err in finding that the Mississippi State Department of Health's grant of the certificate of need to DRMC was supported by substantial evidence and not contrary to the manifest weight of evidence. Further, this Court will not consider facts outside of the record when reviewing appeals from lower courts. Therefore, the judgment of Chancery Court of Hinds County is affirmed.

---

[7]Centers for Medicare and Medicaid Services (CMS) issued regulations in the *Federal Register*, Vol. 72, No. 91 on May 11, 2007, providing special payment provisions for long-term care hospitals within hospitals and satellites of long-term care hospitals.

¶18.   **AFFIRMED**.

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, GRAVES, RANDOLPH AND LAMAR, JJ., CONCUR**.