# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00596-SCT

*H.A.S. ELECTRICAL CONTRACTORS, INC.*

*v.*

*HEMPHILL CONSTRUCTION COMPANY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2015 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | JIM L. DAVIS, III |
| | DAVID BONDS ELLIS |
| | DANNY ALTON DRAKE |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM L. DAVIS, III |
| ATTORNEYS FOR APPELLEE: | DAVID BONDS ELLIS |
| | DANNY ALTON DRAKE |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REMANDED WITH DIRECTIONS - 06/02/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     During jury selection, plaintiff H.A.S. Electrical Contractors (HAS) challenged defendant Hemphill Construction Company's use of two peremptory strikes. HAS argued Hemphill's strikes were racially discriminatory.

¶2.     HAS's race-based objections triggered a three-step ***Batson***[1] analysis. But the record

---

[1] ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

shows the trial court failed to follow the **Batson** criteria when analyzing the challenged strike of Juror 7. We remand this case to the trial court for a limited **Batson** hearing for Juror 7. On remand, the court should determine if HAS can meet its burden to prove purposeful discrimination in Hemphill's exercise of that peremptory strike—i.e., was Hemphill's stated reason for the strike (age) merely pretext for discrimination.

¶3.     We retain jurisdiction of this case pending the outcome of that hearing. Once the results are certified, we will review the trial court's **Batson** determination for Juror 7 and address HAS's remaining issues on appeal.

## Procedural Background

### I.     Suit and Countersuit

¶4.     This is a breach-of-contract case involving a subcontract for electrical work for a state park in Waveland, Mississippi. Subcontractor HAS Electrical Contractors, Inc., sued contractor Hemphill Construction Company, Inc., for breach of contract, quantum meruit, and conversion. HAS requested $570,678.71 in compensatory damages, plus attorney's fees, costs, and punitive damages. Hemphill countersued, seeking $23,677.04 in damages. Hemphill also asked for attorney's fees and expenses under the subcontract.

### II.     Jury Selection

¶5.     The dispute went to a jury trial. The trial court gave both HAS and Hemphill four peremptory strikes to use in selecting the twelve-member jury.[2] HAS used two of its strikes

---

[2] The parties were asked to select from two twelve-member panels. Of the twenty-four potential jury members, four were African-American and the remaining twenty were Caucasian.

without objection. The twelve venire members HAS had accepted were then tendered to Hemphill. Hemphill accepted Jurors 1-3 and 5-6, all white females.[3] Hemphill then used a strike on Juror 7, Don R. Taylor, a black male. HAS interjected, "Judge, we'll just point out that is the first black we have reached on the panel." The court then asked, "Anything further?"

HAS: Judge, we – I guess we would go ahead and ask for a race neutral reason because it is the first black we have reached on panel at this time of the venire.

Court: Well, I don't see how in the world you can have a pattern after one strike, but I will, as I believe the cases say, that I should ask you for a race neutral reason for Number 7, Taylor.

Hemphill: Your Honor, we – my reason, race neutral or otherwise, was age. We just thought he was – we would prefer not to have an older jury panel.

Court: Any response?

HAS: They had accepted Number 2, who is 68 years old, and Number 5 [who] was 62 years old, but they were both white.

Court: All right. Well, I believe that there's not a pattern. That's the first person – that's the first black that's been presented. I don't believe that there's any pattern possible. The older venire, whether there's one or two, or three, I don't believe that's a good reason so I'm going to – I'm going to recognize the strike.

¶6. Hemphill then accepted Jurors 8, a black female, and Juror 9, a black male. Hemphill also accepted Jurors 11 and 12, both white females.[4] Hemphill then struck Juror 13, Rodney Calhoun, a black male.

---

[3] HAS had struck Juror 4, a white male.

[4] HAS also had struck Juror 10, a white male.

3

¶7.   Once again, HAS objected:

HAS:        He's only used two strikes and they've both been on blacks, your Honor.  And we've only reached four blacks at this time and he has struck 50 percent of them.

            . . .

Court:      All right.  . . . I'll hear from you on your **Batson**.

HAS:        Judge, of course, he has now struck Mr. Calhoun.  The blacks that we have reached on jury venire, Number 7, Don Taylor; Number 8, Kadreanna Johnson; Number 9, Mr. Anderson, and; Number 13, Mr. Calhoun.  Today, he has only used two strikes at the time we were at Juror Number 13, and both of them were on black males, and there has only been four blacks reached on the venire at this time and he has struck 50 percent of them.

Court:      All right. I will note for the record that Juror Number 7, that was D1, is a black male; Juror Number 8, that was accepted, is a black female; Juror Number 9, that was accepted, is a black male, and; Juror Number 13 is a black male. So, to my count, there have been four blacks tendered. He's exercised strikes on two and accepted two. I don't believe that that is a pattern showing discrimination, but I'm going to ask for a race neutral reason relative to Juror Number 13.

Hemphill:   He showed his employer as Labor Ready. There's a number of issues here about, in this case, about part-time and temporary employees and we think that would – he would have a bias toward the Plaintiff in this matter.

Court:      What says the Plaintiff?

HAS:        One second, your Honor. We wouldn't accept that as a race neutral reason, your Honor.

Court:      You said you do?

HAS:        Do not. Would not.

Court:      All right.  I do. I'm going to uphold the strike on that.

4

¶8.     Neither side used any more peremptory strikes.  Jurors 14-17, two white females and two white males, completed the jury panel.  And Jurors 18 and 19, both white males, were selected as alternates.

### III.     Verdict and Award

¶9.     At the end of trial, the jury found in Hemphill's favor on both HAS's claims and Hemphill's counterclaim.  While the jury awarded Hemphill no money damages, the trial court awarded Hemphill $90,000 in attorneys fees and expenses.  The trial judge based the award on "prevailing party" language in the subcontract.

## Issues on Appeal

¶10.     On appeal, HAS argues for a new trial, insisting the trial judge failed to conduct a proper *Batson* hearing during jury selection.  *See Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986).  HAS claims the trial court failed to complete the required three-step *Batson* analysis because it did not consider if Hemphill's stated race-neutral reason was persuasive.  Instead, it argues the court wrongly dismissed HAS's *Batson* challenges for "failure" to establish a pattern of discrimination.

¶11.     Alternatively, HAS requests we vacate the award of attorneys fees.  HAS suggests Hemphill was not the "prevailing party" because the jury awarded Hemphill no money damages.

## Discussion

¶12.     At this juncture, we address the *Batson* issue only.  While we find no *Batson* error connected to Juror 13, we do agree with HAS that the trial court failed to conduct a proper

***Batson*** hearing for Juror 7. And we remand for the limited purpose of holding such a hearing.

### I.     ***Batson*'s Three-Part Analysis**

¶13.    The privilege to use peremptory strikes "is subject to the commands of the Equal Protection Clause." ***Batson***, 476 U.S. at 89, 106 S. Ct. at 1719, 90 L. Ed. 2d 69. The Equal Protection Clause prohibits using peremptory strikes to engage in racial discrimination. ***Id.*** While ***Batson*** addressed a prosecutor's use of peremptory strikes in a criminal case, the same prohibition applies when selecting juries in civil cases. *E.g.,* ***Burnett v. Fulton***, 854 So. 2d 1010, 1013-14 (Miss. 2003) (applying ***Batson*** to medical-malpractice case).

¶14.    To safeguard against racial discrimination in jury selection, the United States Supreme Court in ***Batson*** established a three-step process. ***Pitchford v. State***, 45 So. 3d 216, 224 (Miss. 2010) (citing ***Batson***, 476 U.S. 79). First, the party objecting to the use of a peremptory strike has the burden to make a prima facie case that race was the criterion for the strike. Second, if the objecting party makes such a showing, the burden shifts to the striking party to state a race-neutral reason for the strike.[5] Third, after the striking party offers its race-neutral explanation, the court must determine if the objecting party met its burden to prove purposeful discrimination in the exercise of the peremptory strike—that the

---

[5] Race-neutral reasons previously accepted by this court include, but are not limited to, "age, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, short term employment[,]" and defense distrusted juror. ***Hardison v. State***, 94 So. 3d 1092, 1098 (Miss. 2012) (quoting ***Davis v. State***, 660 So. 2d 1228, 1242 (Miss. 1995)).

stated reason for the strike was merely a pretext for discrimination. *Id.*

¶15. On appeal, we "afford[] great deference to the trial court's findings of whether a peremptory challenge was race neutral . . . because finding that a striking party engaged in discrimination is largely a factual finding." *Berry v. State*, 802 So. 2d 1033, 1038 (Miss. 2001) (citations omitted). But to reach that finding, the trial judge must conduct a proper *Batson* analysis. *E.g., Hardison v. State*, 94 So. 3d 1092, 1099 (Miss. 2012) (reversing jury verdict because trial court failed to proceed to step three of *Batson* analysis after being offered a race-neutral reason for the strike).

¶16. Normally, we would begin our review with step one and ask if HAS established a prima facie case that race was the reason for both strikes. But this court follows the United States Supreme Court's procedure in *Hernandez v. New York*, 500 U.S. 352, 355-59, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991). *Pruitt v. State*, 986 So. 2d 940, 943-44 (Miss. 2008). Under *Hernandez*, "once reasons are offered by the proponent [of the strike], the issue of whether a prima facie case of discrimination has been developed is moot." *Hughes v. State*, 735 So. 2d 238, 250 (Miss. 1999) (citing *Hernandez*, 500 U.S. at 359). And we shift our focus to step two. *Berry v. State*, 802 So. 2d 1033, 1037 (Miss. 2001).

¶17. Here, though the trial court did not buy HAS's discrimination-based objections to striking Juror 7 and Juror 13, the court still required Hemphill to articulate a race-neutral reason for both strikes. So the issue of whether HAS met its burden to establish a prima facie case is moot. We begin our review with step two.

II. Juror 7

¶18.    All step two required was that Hemphill state a race-neutral reason for the strike. *Hardison*, 94 So. 3d at 1099-1100.  Hemphill claimed it struck Juror 7, Taylor, because of his age—an accepted race-neutral reason.  *Id.* at 1099; *see also* ***Stewart v. State***, 662 So. 2d 552, 558 (Miss. 1995).  This prompted step three of ***Batson***.

¶19.    Under this step, once "the [striking] party offers a valid race-neutral reason, the trial judge must allow the strike unless the other party demonstrates that the valid race-neutral reason was a pretext for discrimination." ***Hardison***, 94 So. 2d at 1100.  One way to "attempt to refute the other party's race-neutral reason [is] by 'pointing out that similar claims can be made about non-excluded jurors.'" ***McFarland v. State***, 707 So. 2d 166, 172 (Miss. 1997). And here, when asked to rebut Hemphill's race-neutral reason, HAS pointed out that two nonexcluded white jurors, Juror 2 and Juror 5, were similar in age to Taylor.[6]

¶20.    The trial court failed to consider HAS's argument, mistakenly requiring HAS to prove a *pattern* of discrimination, instead of pretext.  This was error.  "[O]nly one instance—not a consistent pattern—of purposeful discrimination is enough to prove a discriminatory purpose." ***McGee v. State***, 953 So. 2d 211, 215 (Miss. 2007).  So to meet its burden, HAS did not have to show a pattern.  Instead, once Hemphill offered a race-neutral reason for striking Taylor, HAS's burden was "to prove that there has been purposeful discrimination in the exercise of the peremptory strike, i.e., that the reason given was a pretext for discrimination." ***Pitchford***, 45 So. 3d at 224.

¶21.    Had step three been conducted properly, HAS would have been permitted to argue and

_____

[6] While the record does not establish Taylor's age, HAS stated in its brief that Taylor was sixty-three years old.  And Hemphill has not contested this assertion.

develop its theory that Taylor's age was a pretext for discrimination. And Hemphill would have been required to explain why, if it did not want "an older jury," it accepted two white jurors in their sixties. But step three was cut short due to the trial court's erroneous pattern belief. Thus, the record remains unclear on the ultimate question the trial court was tasked with deciding—whether Hemphill's stated reason for striking Taylor was race-neutral or merely a pretext for purposeful discrimination. *See Pruitt*, 986 So. 2d at 944. For this reason, we find remand necessary to afford HAS a full hearing on its claim Hemphill's strike of Taylor was discriminatory.

### III.    Juror 13

¶22.    But Juror 13, Calhoun, presents a different story. As with Juror 7, the trial court was not persuaded HAS had made a prima facie case. But as with Juror 7, this issue is moot because the judge required Hemphill to state a race-neutral reason. *Id.* at 943-44; *Hughes*, 735 So. 2d at 250. And once again, Hemphill did. Calhoun worked for a temporary-employment company, and the case involved issues of part-time and temporary employment. Thus, Hemphill was concerned Calhoun would be biased against it. *See Foster v. State*, 639 So. 2d 1263, 1280 (Miss. 1994) (listing employment history and type of employment as accepted race-neutral reasons).

¶23.    Significantly, at this point, the judge gave HAS the opportunity to rebut Hemphill's race-neutral reason and persuade him why the reason was pretextual. But in contrast to Juror 7, HAS provided *no rebuttal*. Instead, HAS simply informed the judge it did not "accept that as a race-neutral reason."

¶24. Under step three of *Batson*, "[t]he burden remains on the opponent of the strike to show that the race-neutral explanation given is merely a pretext for racial discrimination." *Hicks v. State*, 973 So. 2d 211, 219 (Miss. 2007) (citing *Berry v. State*, 802 So. 2d 1033, 1042 (Miss. 2001)).  And "[w]hen the [objecting party] offers no rebuttal, the court is forced to examine only the reasons given by the [striking party]." *Bush v. State*, 585 So. 2d 1262, 1268 (Miss. 1991); *see also Johnson v. State*, 529 So. 2d 577, 584 (Miss.1988) (finding "the lack of any rebuttal" to the striking party's stated race-neutral reason "significant").  HAS made absolutely no attempt to meet its burden to prove Hemphill's reason for striking Juror 13 was pretextual.[7]

¶25. Thus, we find no error or unclarity here in the circuit judge's accepting Hemphill's stated reason to strike Juror 13 as nondiscriminatory.  Unlike with Juror 7, no further examination for pretext was required.  *Bush*, 585 So. 2d at 1268.

¶26. Because the trial court did not err in its *Batson* analysis of Juror 13, we do not disturb the trial court's determination that the strike of Juror 13 was nondiscriminatory.  We remand the question of striking Juror 7 only.

**Conclusion**

¶27. On remand, the trial court should conduct the third step of *Batson* analysis for Juror 7. HAS should be allowed the opportunity to prove purposeful discrimination—i.e., Hemphill's

---

[7] While the dissent would suggest otherwise, when conducting *Batson*'s third step, the burden remains on the strike's opponent to show the given race-neutral explanation is pretext for discrimination. *Hicks*, 973 So. 2d at 219 (citing *Berry*, 802 So. 2d at 1042). Because HAS's attorney made no attempt to show pretext, under our discretionary review, we do not second-guess the judge's accepting Hemphill's race-neutral reason for striking Juror 13.

race-neutral reason for striking Taylor was pretextual. And Hemphill should be permitted to defend its stated reason for striking Taylor—age. But Hemphill is restricted from giving any new, race-neutral reason to justify the strike. Further, to support their arguments, both parties are limited to using the record as it existed at the time of the original *Batson* hearing.

¶28. This court retains jurisdiction of this case pending the trial court's certified results of the *Batson* hearing. We will then review the trial court's *Batson* ruling for Juror 7, along with the other appellate issues not addressed in this opinion.

¶29. **REMANDED WITH DIRECTIONS.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, COLEMAN AND BEAM, JJ., CONCUR. RANDOLPH, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BEAM, J.; DICKINSON, P.J., LAMAR, COLEMAN AND MAXWELL, JJ., JOIN IN PART. KING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.**

**RANDOLPH, PRESIDING JUSTICE, CONCURRING**:

¶30. The purpose of *Batson*[8] and its progeny is the eradication of purposeful discrimination due to prejudice, animus, or bias reflected in the intentional exclusion of jurors based on their race. It is a struggle that plays out daily in courtrooms across our nation.[9] Our system

---

[8]*Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 69 (1986), *extended to gender-based strikes by* *J.E.B. v. Alabama*, 511 U.S. 127, 141, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994).

[9]The concept of purposeful discrimination is not relegated to one side or to one race. All of HAS's strikes were against whites, but because Hemphill failed to raise a *Batson* challenge, HAS's strikes are not before this Court on appeal. When asked at oral argument why HAS wanted the two challenged African Americans on the jury, counsel replied that he likes minorities and finds them more sympathetic to his clients. HAS's counsel admitted that he selects jurors based on color, but that he "always makes sure he has good notes to justify [his strikes]" and is prepared to argue accordingly. This revelation begs the question whether HAS claims that Hemphill's strikes were in fact racially motivated or whether HAS's

designates trial judges to oversee compliance—a most difficult task, given that attorneys are "mak[ing] sure [they have] good notes to justify [their strikes]." It is the responsibility of the trial judge to observe the jury-selection process, which includes, *inter alia*, the conduct and activity of the parties and attorneys in prior cases, the interplay between attorneys and potential jurors, and the demeanor of all, and ultimately to evaluate the credibility of all. Justice King's dissent correctly directs the trial court to consider "all of the circumstances that bear upon the issue of racial animosity." (Diss. Op. at ¶ 37) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008)). *Snyder* further holds "that these determinations of credibility and demeanor lie peculiarly within a trial court's province, and . . . in the absence of exceptional circumstances, we would defer to the trial court." *Snyder*, 552 U.S. at 477 (internal citations omitted). That being said, it is incumbent upon our trial judges to understand and follow the mandates of *Batson* and its progeny, and to adhere meticulously to the prescribed process.

¶31.    *Batson* challenges should be analyzed step-by-step. First, the party contesting the strike must make a prima facie showing that the juror's race was the criterion for the strike. *Birkhead v. State*, 57 So. 3d 1223, 1230 (Miss. 2011). A prima facie showing is made by producing evidence sufficient to permit the trial judge to draw an inference based on the totality of the circumstances that the strike was racially motivated. *See id.* If, and only if, the court is satisfied that a prima facie showing has been made, then the party exercising the

---

objections were based on the fact that, since it struck jurors based on race, Hemphill must have done the same thing. While offering no insight for the trial judge or this Court, this revelation nevertheless illuminates how difficult it is for any judge to sort out the truth.

12

strike must offer a race-neutral reason for the strike. Once a race-neutral reason is offered, the opposing party may offer rebuttal. *See id.* at 1229 (citing ***Berry v. State***, 802 So. 2d 1033, 1037 (Miss. 2001)). At this stage, the trial court should make a factual finding and conclude whether the strike should stand or whether the stated reason was pretextual, *i.e.*, a disguise for purposeful racial discrimination.[10] If the opposing party fails to rebut, the trial judge's decision should be based on the stated reason.[11] *See id.*; ***Hardison***, 94 So. 3d at 1098.

¶32.    In the case *sub judice*, when faced with a ***Batson*** challenge, the trial judge mistakenly found there was no basis for the objection, as no pattern could be established. As the majority opinion holds, evidence of a pattern of discriminatory strikes is but one factor a court should consider when determining whether the opponent of a strike has made a prima facie showing of discrimination; it is not a required factor. (Maj. Op. at ¶ 20) (citing ***McGee v. State***, 953 So. 2d 211, 215 (Miss. 2007)). *See also* ***People v. Davis***, 803 N.E.2d 514, 522 (Ill. App. Ct. 2004) ("If the absence of a 'pattern of strikes' were enough, in and of itself, to defeat the establishment of a prima facie showing of discrimination under ***Batson***, this would effectively enable a prosecutor to exercise at least one peremptory challenge in a discriminatory manner. Such a possibility is untenable in light of the fact that, pursuant to

---

[10]At this step, the trial court must make credibility findings, for the trial court is "uniquely in a position to observe the demeanor and assess the credibility" of the attorneys during jury selection as well as the demeanor of the potential jurors—observations that a blank record fails to reveal. *See* ***Birkhead***, 57 So. 3d at 1230; ***Booker v. State***, 5 So. 3d 356, 360 (Miss. 2008).

[11]I agree with Justice Maxwell's majority opinion that, because HAS failed to rebut the race-neutral reason offered for the second strike, the ***Batson*** hearing on remand should be limited to the first ***Batson*** challenge.

13

***Batson*** and its progeny, the exclusion of just one venireperson on account of race is unconstitutional and requires reversal of the conviction.").

¶33.    Based on the record before us, it is unclear whether the trial court ruled that HAS had established a prima facie showing that racial animosity was the criterion for Hemphill's first strike, as the proceedings drifted into the second stage of a ***Batson*** analysis. While pondering the lack of a pattern, the trial judge nevertheless required Hemphill to offer a race-neutral reason for its strike.[12] The trial judge failed to address any other factor it considered in ascertaining whether HAS had made its prima facie showing.[13] Rather than proceeding methodically through the required three-step ***Batson*** procedure, the trial court collapsed the

_____

[12]HAS's attempted rebuttal of Hemphill's reason for its first strike (not wanting a jury panel composed of older persons) was that Hemphill had accepted two similarly aged jurors. HAS's argument is based on facts not in the record. Two unidentified female jurors are said to have been 62 and 68 years old, and while HAS argues in its brief that the challenged juror was 63, his age is undisclosed in the recorded voir dire. Included in HAS's motion for new trial is a list of potential jurors, their races, and their genders, which is not contained anywhere else in the record, nor is it supported by any evidence. The juror information cards were not made a part of the record. We cannot consider facts outside the record. *See* ***Greenwood Leflore Hosp. v. Miss. State Dep't of Health***, 980 So. 2d 931, 936 (Miss. 2008) (citing ***In re City of Jackson***, 912 So. 2d 961, 971 (Miss. 2005)).

[13]HAS objected when Hemphill exercised its first strike against the first black juror on the panel and stated "I guess we would go ahead and ask for a race neutral reason because it is the first black we have reached on panel at this time of the venire." But HAS had no right to ask for a race-neutral reason. Only if the court found a prima facie showing had been made was it to ask for a race-neutral basis for the strike. Both parties compounded this confusion in their post-trial arguments. HAS argued in its motion for new trial that, after Hemphill had used two of its four strikes against African Americans, HAS "alleged a racial pattern and requested race neutral reasons. The [c]ourt did not feel that this was a pattern exclusion of blacks and allowed both of [HAS]'s peremptory strikes to stand[.]" Not to be outdone, Hemphill argued that "the [c]ourt was clearly correct when it did not require a racially neutral reason for the second peremptory strike." But HAS did not allege a pattern after the first strike, and the trial court did require Hemphill to give a race-neutral reason for the second strike.

14

first and second steps into a single inquiry, an obvious error. Courts are required to complete the first step, a determination of whether a prima facie showing has been made, before proceeding to the second. In the absence of a prima facie showing, the inquiry terminates.

¶34.   On remand, the trial judge may consider such evidence and arguments presented by the parties so as to ensure compliance with the third step of *Batson*, as steps one and two are moot. Additionally, the judge may consider any notes he may have made contemporaneous to voir dire and may also rely upon his own recollections and observations made of the jurors or the attorneys. If the trial judge relied upon information contained on the juror information cards, he may consider them as well.

**BEAM, J., JOINS THIS OPINION. DICKINSON, P.J., LAMAR, COLEMAN AND MAXWELL, JJ., JOIN THIS OPINION IN PART.**

**KING, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶35.   I agree with the majority's conclusion that the trial court erred in its *Batson* analysis for Juror 7. However, because I believe that there are serious concerns as to the pretextual nature of both of Hemphill's proffered explanations, I dissent from the majority's finding that the trial court may not consider Hemphill's explanation for striking Juror 13 on remand.

¶36.   The purpose of *Batson* was to "eradicate racial discrimination in the procedures used to select the venire from which individual jurors are drawn." *Batson v. Kentucky*, 476 U.S. 79, 85, 106 S. Ct. 1712, 1716, 90 L. Ed. 2d 69 (1986). The United States Supreme Court described its efforts as "unceasing" on this issue. *Id.* Indeed, the Court found that "racial discrimination in jury selection offends the Equal Protection Clause," because a party has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory

15

criteria." *Id.* at 85. This concept advances the policy of the United States, that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected *at random from a fair cross section of the community* in the district or division wherein the court convenes." 28 U.S.C.A. § 1861 (West 2015) (emphasis added). Yet, despite the Supreme Court's unceasing efforts, discrimination in the use of peremptory challenges remains to this day. The majority and concurring opinions do little to diminish this problem and, I fear, may even widen the gap that our Supreme Court has worked so hard to close.

¶37. The United States Supreme Court previously has emphasized that, when analyzing a *Batson* objection, "all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008). When there are doubts as to the outcome of a *Batson* challenge, a court is "required to consider the strike of [one juror] for the bearing it might have upon the strike of [a second juror]."[14] *Id.* Hemphill used its first peremptory strike against the first African-

---

[14]Not only does the trial court have a duty to evaluate the proffered explanations individually, but also *in toto* to determine if the reasons given were pretext for discrimination. *Flowers v. State*, 947 So. 2d 910, 937 (Miss. 2007). "The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations . . . ." *Gamble v. State*, 357 S.E. 2d 792, 795 (Ga. 1987); *see also* *Lewis v. Lewis*, 321 F.3d 824, 831 (9th Cir. 2003) ("After analyzing each of the prosecutor's proffered reasons, our precedent suggests that the court should then step back and evaluate all of the reasons together."). *Batson*'s prohibition against discrimination in jury selection is intended to benefit the parties as well as the potential jurors. The parties as participants in the action have the ability to object to the selection process. That same ability is not true of potential jurors, so it is the trial court's responsibility to protect the rights of the potential jurors. Thus, contrary to footnote 7 of the majority's opinion, the ultimate responsibility to ensure fairness in the jury selection process rests with the trial court. The majority's footnote 7 seems to suggest that the trial court simply sits like one of the three little monkeys who sees no evil. Such a position is inconsistent with the responsibility placed upon the trial court to prevent unconstitutional discrimination in the jury selection process. While it is true that

16

American potential juror, Juror 7, stating when questioned that it did not want an older jury panel. Yet, Hemphill had accepted Juror 2, who was Caucasian and sixty-eight years old, (five years older than Taylor's sixty-three years), as well as Juror 5, a sixty-two-year-old, who also was Caucasian. Hemphill gave no explanation for its disparate treatment of African-American and Caucasian jurors in using its first peremptory strike. Thus, under the *Snyder* precedent, Hemphill's explanation for striking Juror 7 also throws Hemphill's reason for striking Juror 13 into question. In order to conduct a proper *Batson* analysis on remand, the trial court must be required to consider Hemphill's use of its peremptory strikes *in toto*.

¶38.     Moreover, I believe that the trial court did in fact err in its *Batson* analysis for Juror 13. The majority contends that Juror 13 presents a different story. But the trial court's analysis for Juror 13 is strikingly similar to its analysis for Juror 7. As with Juror 7, when HAS objected to Hemphill's second use of a peremptory strike against an African-American potential juror, the trial court again stated that it did not believe that a pattern had been established and summarily accepted Hemphill's proffered explanation without further analysis. When asked to provide a reason for striking Juror 13, Hemphill offered a vague and nonspecific explanation that lacked substance. Without considering the indicators which suggested the proffered reasons were a pretext for racial discrimination, the trial court summarily accepted Hemphill's explanation and stated: "All right. I do. I'm going to uphold

_____

the opponent of a strike does carry a burden, that does not relieve the trial court of its obligation to consider whether there is pretext in the exercise of a strike.

17

the strike on that."[15] Clearly the trial court failed to address any of the factors to be considered when determining whether the proffered explanations were merely a pretext for intentional discrimination in both Juror 7's case and in Juror 13's case.

¶39.    The majority writes that "the burden remains on the strike's opponent to show the given race-neutral explanation is pretext for discrimination" in the third step of **Batson**. The majority fails to address the fact that the opponent of the strike must be given a fair opportunity to rebut the proponent's proffered reasons. Here, after HAS objected to Hemphill's second use of peremptory strikes to exclude an African-American juror, the trial court again stated that he did not believe that a pattern had been established but asked for a race neutral reason. Hemphill responded that he might have a possible bias toward the plaintiff because of his employment by Labor Ready. HAS then stated that it would not accept that as a race neutral reason. The trial court did not allow any further analysis and merely stated, "All right. I do." Thus, HAS had no opportunity to explain why it believed that Hemphill's stated reason was pretextual. Not only was HAS deprived of a fair opportunity to respond, but I believe any response would have been moot. The trial court summarily accepted Hemphill's explanations without analysis or concern. That summary acceptance of Hemphill's explanations for both Jurors 7 and 13 is precisely why, on remand, the trial court must revisit both of Hemphill's questionable strikes.

¶40.    Additionally, this Court has held that a trial court should consider "the extent and

---

[15] The trial court made this ruling despite the fact that, after the jury was picked, when discussing the topic of objections during trial, the trial court itself stated that "[t]he things that will give me the most problems is going to be on relevance and things of that nature since I know nothing about the case."

18

nature of voir dire on the grounds upon which the strike is being exercised." ***Hardison v. State***, 94 So. 3d 1092, 1100 (Miss. 2012). "If the State asserts that it was concerned about a particular characteristic but did not engage in meaningful voir dire examination on that subject, then the State's failure to question the juror on that topic is some evidence that the asserted reason was a pretext for discrimination." ***Reed***, 555 F. 3d at 376. The trial court conducted no analysis into whether there was a possibility of actual bias of not. When the trial court asked Hemphill to give a race-neutral reason for striking Juror 13, Hemphill stated that it had struck Calhoun because he had listed his place of employment as Labor Ready on his jury card and because the case contained a number of issues about part-time and temporary employees. Yet neither party in voir dire asked the potential jury members whether they were temporarily employed or whether they worked part-time. In fact, no questions were asked of either Taylor or Calhoun during voir dire. The trial court failed to take any of the ***Batson*** factors into consideration. It merely stated that it accepted Hemphill's reason and moved on.

¶41.   And, while it may be arguable whether part-time or temporary employment was enough of an issue to evoke wariness, it is the trial judge's burden to conduct a proper ***Batson*** analysis. *Cf.* ***Hardison***, 94 So. 3d at 1102 ("[T]he trial judge's failure to conduct a proper ***Batson*** analysis constituted clear error."); ***Hatten v. State***, 628 So. 2d 294, 298 (Miss. 1993) ("[W]e today decide it necessary that the trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State for the use of its peremptory challenges against potential jurors.").

¶42.    The concurring opinion initially notes that the purpose of ***Batson*** is the elimination of unconstitutional discrimination in the jury selection process. However, the concurring opinion then immediately strays from the issue of this case by its extended discussion in footnote nine, of HAS and its motivation in the exercise of jury challenges, and whether that motivation is the basis upon which it questioned Hemphill's jury strikes. The issue of whether HAS improperly struck jurors was not before the trial court and is not now before this Court. Therefore, any speculation thereof is moot. The effect and perhaps the purpose of such a discussion is to cloud rather than illuminate the issue which this Court is asked to address.

¶43.    The concurring opinion does then correctly note that the burden is placed upon the trial judge to ensure that there is no unconstitutional discrimination in the jury selection process. This Court has not always been of assistance to the trial courts in that effort. Perhaps the greatest service that this Court could render in that effort would be the complete elimination of peremptory jury challenges, and the requirement that all challenges be based upon cause clearly set out in the record. Hemphill Construction appears to have made no effort in the record before this Court to demonstrate the truth of the reasons given for striking Jurors 7 and 13. Such a requirement would eliminate the often farcical process of offering questionable reasons for striking jurors in an effort to avoid the mandate of ***Batson***.

¶44.    In conclusion, the concurring opinion states that, upon remand, "the trial judge may consider such evidence and arguments presented by the parties so as to ensure compliance with the third step of ***Batson*** . . . ." I would disagree. The determination should be made upon

the facts as were before the court when the strikes were exercised. While this would include the trial court's contemporaneous notes, it would not allow for the introduction of new information. Nor should it be read as allowing Hemphill to view the existing record with a high powered microscope to find a new reason to justify its challenge.

¶45. The approach taken by the majority and concurring opinion would seem to be designed to limit, rather than fully enforce, the mandate of ***Batson***. The majority's holding that, notwithstanding the questionable circumstances surrounding the strikes of both Jurors 7 and 13, that each must be considered in a vacuum and that there was no error with respect to Juror 13, at best defies logic. At worst, it appears to be a self-fulfilling prophecy upon which to justify a finding of no discriminatory action. Accordingly, I dissent from the majority's finding that the trial court did not err in conducting its ***Batson*** analysis for Juror 13 and would require the trial court to consider Hemphill's use of its peremptory strikes in whole.

**KITCHENS, J., JOINS THIS OPINION.**